**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert Dean CLARK,
Defendant–Appellant.**

**Nos. 88–5995, 89–5476.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 7, 1990.

Stewart G. Abrams, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., Anthony Sanchez, Linda C. Hertz, Lynne W. Lamprecht, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before FAY and KRAVITCH, Circuit Judges, and LYNNE *, Senior District Judge.

FAY, Circuit Judge:

Appellant Robert Dean Clark was adjudicated not guilty only by reason of insanity of attempted murder charges. Subsequently, the court held a hearing to determine if Clark's release would create a danger to persons or property. Having discounted the testimony introduced at this hearing, the court ordered re-examinations of Clark, the results of which were to be presented at a later hearing. After hearing the results of the latter examinations, the district court found that Clark was dangerous and committed him to the custody of the Attorney General pursuant to 18 U.S.C. section 4243 (Supp. V 1987). Clark challenges the district court's actions. Clark asserts that the evidence presented at his initial dangerousness hearing clearly and convincingly established that his release would not have created a substantial risk of bodily injury to another person or serious damage to the property of another because of a present mental disease or defect. He argues that the district court therefore abused its discretion when it ordered Clark to be committed after the initial hearing so that additional opinions regarding his dangerousness could be rendered. Clark contends further that the district court abused its discretion when it utilized the additional information to arrive at its final dangerousness determination. Finally, Clark argues that by ordering the additional evaluations, the trial court implicitly found that Clark was entitled to release. We reject appellant's arguments and AFFIRM the district court's orders.

## BACKGROUND

On February 16, 1988, appellant Robert Dean Clark with his pocket knife slit the throat of a fellow passenger on an international airline flight en route from Panama City, Panama, to Miami, Florida. Appellant was arrested and subsequently indicted on February 25, 1988, for attempted murder in violation of 49 U.S.C.App. section 1472(k) (Supp. V 1987) and 18 U.S.C. section 1113 (1982) while within the special aircraft jurisdiction of the United States as defined by 49 U.S.C.App. section 1301(38) (1982 & Supp. V 1987). On March 4, 1988, appellant filed a notice of intent to rely upon the defense of insanity. After reviewing evaluations by Drs. Lloyd Miller and Sanford Jacobson, the court determined that Clark was competent to stand trial, but, recognizing that appellant would raise the issue of insanity at trial, committed Clark to the custody of the Attorney General pursuant to 18 U.S.C. section 4247(b) (Supp. V 1987). The court ordered the Attorney General to arrange for psychiatric examinations to determine whether Clark was insane at the time he committed the charged offense. On June 7, 1988, the court again found Clark competent to stand trial based on a supplemental evaluation prepared by Drs. James Leach and David Reuterfors, who concluded that although Clark was competent to stand trial, he was unable to appreciate the nature and quality or the wrongfulness of his acts. After a bench trial on stipulated facts, Clark was adjudicated not guilty only by reason of insanity on June 9, 1988.

Following trial, in response to a joint motion, the district court ordered a psychiatric examination of Clark by Dr. Lloyd Miller to determine if he would "create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect." R1–15 (No. 88–5995). Additionally, the court granted appellant's unopposed motion for an order directing Drs. Leach and Reuterfors to conduct a study of

---

* Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

Clark's "dangerousness." R1–18 (No. 88–5995). Both reports were filed with the court.

After reexamining Clark, Dr. Miller concluded that Clark was suffering from symptoms of a paranoid disorder. Therefore, although he determined that appellant was not at that time dangerous to himself or others, he recommended placement of appellant in a psychiatric halfway house or a federal halfway house. He warned that Clark's mental condition could deteriorate at an indeterminate time, thereby creating a risk of danger to himself and others.

In their evaluation of Clark, Drs. Leach and Reuterfors determined that Clark, at the time of the examination, did not suffer from a severe mental disease or defect and concluded that Clark did not present a danger to others or to the property of others. R1–22–3 (No. 88–5995). In their report, they stated that Clark was "felt to have suffered an acute psychotic break, possibly involuntarily induced by chemical substances, at the time of the offense." *Id.* This conclusion evidently was derived from the symptoms Clark exhibited and from Clark's statements that he had involuntarily received a dose of drugs at some point before or during his flight. R1–21–46, 49–50, 55–56.[1]

The court held the dangerousness hearing pursuant to 18 U.S.C. section 4243(c). The trial judge considered the report and depositions of Drs. Leach and Reuterfors as well as the report and live testimony of Dr. Miller and the testimony of Dr. Mary Frenzel[2] in reaching his conclusion. Dr. Frenzel's testimony paralleled the reports of Drs. Leach and Reuterfors. Her opinion was that Clark was not suffering from a mental disease or defect at the time she examined him and that the offense with which he was charged resulted from either a stress-related or drug-induced psychosis.

Thus, she concluded that Clark was not a dangerous individual. Dr. Miller's testimony was consistent with his report. He testified that Clark suffered from a mental disease or defect, a paranoid disorder, and rejected the theory that Clark was suffering from a drug-induced psychosis. He concluded that Clark was not dangerous, but suggested that the court should place Clark in a halfway house so that his progress or regression could be monitored. At the conclusion of the hearing, the court disparaged the conclusions reached by Drs. Leach, Reuterfors and Frenzel and while questioning Dr. Miller's conclusion that Clark would not present a danger, attempted to locate a suitable facility in accordance with his recommendations. However, the court was unable to locate an amenable facility other than the Federal Correctional Institute at Butner, North Carolina and thus ordered commitment to that facility so that further examinations could be conducted:

> [T]he unexplained behavior of the defendant evidencing a total psychotic disorder continues to be exceedingly troubling to this court.
>
> The Probation Office's efforts to secure the type of meaningful supervision contemplated by Dr. Miller's recommendation in a restricted environment appears to the Court to be unavailable outside of the facility to which the defendant Hinckley was placed for observation after his attempted assassination of President Reagan.
>
> It is, therefore, the view of this Court that it desires that additional observation be made of the defendant at the Federal Correctional Institute at Butner, North Carolina, for a follow-up evaluation. This is ordered because the Court has already had the benefit of whatever

1. Clark suggested that a variety of incidents could have caused his intoxication: a young girl on Contadora Island squirted liquid on his arm with a water gun; he ate chicken which tasted foul; he wiped his hands with a towel which was saturated with a greasy substance; he smoked terrible tasting cigarettes while on Contadora Island; on the airplane, he sipped wine with a very bitter taste; he recalled that a pin or needle stuck him during the flight. Plaintiff's Exhibit 1 (No. 88–128–Cr–EPS).

2. Dr. Frenzel was a staff psychologist at the Metropolitan Correctional Center in Miami, Florida, when Clark was admitted for evaluation, and she conducted a few examinations of Clark.

study can be done at the Medical Center for federal prisoners at Springfield, Missouri.

It is, therefore, the Order of this Court that the defendant be committed to the custody of the Attorney General of the United States pursuant to the provisions of Title 18, United States Code, Section 4243 and to be transported ... to the Federal Correctional Institute at Butner, North Carolina at such time as they have available facilities and for the defendant to remain there for a period of not less than ninety (90) days nor more than one hundred eighty days (180) for a complete study and analysis to be made....

Upon completion of that report, this Court will continue the hearing heretofore held and will make the determination required of this Court pursuant to Title 18, United States Code, Section 4243.

R1-28-4-5 (No. 88-5995).

■ Subsequent to the court's directive, appellant filed the first of these consolidated appeals. Appellant addressed two issues: first, whether this court can assume jurisdiction, since the district court continued the dangerousness hearing until receipt of the Butner opinions;[3] and second, whether the district court abused its discretion by ordering the additional examinations. After oral argument, while the first appeal was pending in this court, the district court requested a remand to determine conclusively the dangerousness issue, as the additional evaluations that the court had ordered had been completed. The request was granted. Thereafter, the district court conducted a hearing to consider all of the evidence pertaining to whether the release of Clark would create a substantial risk of bodily injury to another person or serious damage to property of another because of a present mental disease or defect. The court found that Clark indeed presented a danger to other people and property and ordered that he be com-

mitted to the custody of the Attorney General pursuant to the provisions of 18 U.S.C. section 4243, with a recommendation that he be placed in the Federal Correctional Institute at Butner, North Carolina.

Appellant timely filed the second of these consolidated appeals asserting error in the district court's decision to commit him to the custody of the Attorney General. Appellant advanced two arguments: first, appellant asserted that the district court abused its discretion in having entertained the additional testimony from the medical staff of the Federal Correctional Institute, Butner, North Carolina; second, appellant redundantly argued that the district court abused its discretion in ordering the examinations after the initial hearing. In his latter argument, however, appellant contends that the district court implicitly found that Clark was not dangerous and therefore needlessly committed him to the Butner facility for further evaluation.

DISCUSSION

Section 4243(c) of Title 18 provides that a person found not guilty by reason of insanity of an offense involving bodily injury shall be granted a hearing not later than forty days after the special verdict to determine whether the release of such person will be dangerous to others or their property. The hearing is to be conducted in accordance with 18 U.S.C. section 4247(d) (Supp. V 1987) which provides that defendant is to be represented by either retained or appointed counsel and must be given the opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses.

Prior to the date of the hearing, the court must order that a psychiatric or psychological examination of the defendant be conducted in accordance with section 4247(b) and (c) (Supp. V 1987). Section 4247(b) states that for purposes of determining a defendant's dangerousness, the court is to appoint an examiner and may

---

**3.** The jurisdictional issue no longer exists. The trial judge, after reviewing the additional evaluation he requested at the initial dangerousness hearing, has finally and conclusively ordered Clark to be placed in the custody of the attorney general. This is a final appealable order. 28 U.S.C. § 1291 (1982); *see, e.g., United States v. Wallace,* 845 F.2d 1471, 1472 (8th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 121, 102 L.Ed.2d 94 (1988).

commit defendant for no longer than forty-five days to the custody of the Attorney General for examination, except that an extension of thirty days may be granted if the director of the facility shows that the additional time is necessary to observe and evaluate the defendant. Section 4247(c) describes the requisite content of the report and provides that the report is to be filed with the court and copies are to be sent to the interested parties.

At the hearing, defendant has the burden of proving by clear and convincing evidence that his release would not create a substantial risk of bodily injury to a person or serious damage to property because of a present mental disease or defect. 18 U.S.C. § 4243(d). If defendant fails to satisfy his burden of proof, the court shall commit him to the custody of the attorney general for care and treatment. 18 U.S.C. § 4243(e); *Phelps v. United States*, 831 F.2d 897, 898 (9th Cir.1987).

▮ Appellant contends that the district court abused its discretion when, after the first hearing, the judge ordered Clark to be transferred to Butner for further examinations. We are surprised that appellant has taken such a position. If anything, the trial judge's decision granted Clark an additional opportunity to present a credible expert who could give a favorable, yet plausible, explanation for Clark's bizarre conduct on the aircraft. In fact, the court stated:

> If this Court had made an ultimate conclusion based on the first hearing alone, this Court would have found that Defendant had failed to prove by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect. The testimony of the Springfield experts was not found credible, and this Court has no choice but to conclude that the evaluation of the experts at Springfield was either inaccurate or incomplete.

R1–36–14 (No. 89–5476).

If we were to assign error to the trial court's ruling based on the statutory provisions involved, we would find that the court erroneously deferred its decision to commit Clark to the custody of the Attorney General after determining that he had failed to carry his burden of proof. Section 4243(e) provides in pertinent part:

> If, after the hearing, the court fails to find by [clear and convincing evidence] that the person's release would not create a substantial risk of injury or damage of property of another due to a present mental disease or defect, the court shall commit the person to the custody of the Attorney General.

Such a holding would not benefit Clark. To the contrary, it would reaffirm the trial judge's ultimate decision to commit Clark to the custody of the Attorney General.

Appellant contends, however, that the district court was incorrect in finding that the evidence presented at the initial hearing was insufficient to entitle Clark to be released. Appellant asserts that he carried his burden of proving by clear and convincing evidence that his release would not create a substantial risk of danger to persons or property and therefore argues that the district court requested the Butner evaluations without reason. In addressing this issue, it is necessary to determine how much deference to accord the district judge's finding of dangerousness. While we are unaware of any authority establishing a standard of review for section 4243 cases in this circuit, we believe cases dealing with determination of a defendant's competency to stand trial are most apposite. There has been a divergence, however, in binding authority on the issue. *See Bundy v. Dugger*, 850 F.2d 1402, 1408 n. 5 (11th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 849, 102 L.Ed.2d 980 (1989). For example, one line of cases proposes that "[a] district court's determination of competency in a particular case is a finding of fact which may not be set aside on review unless it is 'clearly arbitrary or unwarranted.' " *United States v. Fratus*, 530 F.2d 644, 647 (5th Cir.) (quoting *United States v. Gray*, 421 F.2d 316, 317 (5th Cir.1970)), *cert. denied*, 429 U.S. 846, 97 S.Ct. 130, 50 L.Ed.2d 118 (1976); *see also United States v. Caraza*, 843 F.2d 432, 437

(11th Cir.1988); *United States v. Hayes*, 589 F.2d 811, 822 (5th Cir.), *cert. denied*, 444 U.S. 847, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979). Another line of cases admonishes that "we should take a hard look at the trial judge's ultimate conclusion and not allow the talisman of clearly erroneous to substitute for thoroughgoing appellate review of quasi-legal issues." *United States v. Makris*, 535 F.2d 899, 907 (5th Cir.1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977); *see also Strickland v. Francis*, 738 F.2d 1542 (11th Cir.1984); *Lokos v. Capps*, 625 F.2d 1258, 1267 (5th Cir.1980). We need not decide, however, which standard is more appropriate for review of dangerousness determinations by the district court because even under the less deferential standard we cannot find error in the district court's conclusion.

Our review of the record leads us to conclude that based on the evidence adduced at the first hearing, the trial judge was completely justified in finding that appellant failed to prove his entitlement to release. Although all of the witnesses and reports considered at the initial hearing rendered the same opinion—that Clark was not a danger to himself or others—the reasoning employed by the experts provided solid grounds on which to reject their conclusions. For instance, the doctors who diagnosed Clark as having suffered an acute psychotic break were willing to entertain the possibility that appellant had received an involuntary dose of drugs from imaginary sources. The doctors themselves believed that the sources were delusional, yet did not reject them as a cause for appellant's bizarre conduct. Without question, such testimony raises serious doubts regarding the soundness of the experts' conclusions. The trial judge clearly recognized the shortcomings of the experts' analyses: "To attribute credence to the defendant's behavior as being the result of a drug induced condition being brought about by a youth having squirted him with a water gun, obviously containing some narcotic, while on the beach in Panama, is in the Court's opinion itself engaging in delusion." R1-28-3 (No. 88-5995). Furthermore, every expert recommended continued monitoring as a condition of release, yet still concluded that Clark was not dangerous.[4] It seems to us that if the experts were reasonably certain of the safety of Clark's release, then they would not have recommended continued monitoring. In fact, Drs. Leach and Reuterfors reported that "future dangerousness cannot be predicted with a reasonable degree of certainty," and "[t]he recurrence of a psychotic condition such as occurred that resulted in the recent offense also cannot be accurately predicted." R1-22-3 (No. 88-5995). Mindful of the trial judge's awesome responsibility to the public to ensure that a clinical patient's release is safe, we find no error in the trial court's determination that the evidence presented at the first hearing failed to prove clearly and convincingly that Clark was not dangerous. Having properly determined that the testimony elicited at the first hearing was insufficient to establish defendant's entitlement to release, the district court, unconvinced by the seemingly absurd conclusions of the Springfield examiners, was merely trying to more accurately determine defendant's fitness for release when it ordered additional studies. We hold that the district court was justified in refusing to release Clark.

■ Appellant additionally asserts that the district court abused its discretion when it utilized the testimony of the experts from Butner in reaching its final determination. In light of the foregoing dis-

---

**4.** To illustrate, Doctor Miller explained that Clark's condition could deteriorate and recommended placement in a federal halfway house or a psychiatric halfway house. R1-23-2, 3 (No. 88-5995). Doctor's Leach and Reuterfors likewise recommended that regular monitoring by mental health professionals and probation officers should be a condition of Clark's release. The court made an effort to locate a halfway house pursuant to Dr. Miller's recommendation, but none were available. R1-28-4 (No. 88-5995). Appellant argues that the trial court abused its discretion, because upon its failure to find a halfway house, it should have released him into the community. We find appellant's argument to be absurd. The court was faced with the alternatives of either releasing or committing for further study a person who had not long before slit an innocent person's throat and who continued to engage in delusional thinking. The court fulfilled its obligation to both the community and the appellant when it ordered the additional Butner examinations.

cussion, however, this argument is without merit. Even if we ruled that the trial judge should not have utilized the Butner evaluations, Clark would not be entitled to release. The fact remains that Clark failed to establish his lack of dangerousness through clear and convincing evidence at the first hearing and was subject to being committed to the custody of the Attorney General at that time. Clark could have only benefitted from the introduction of the testimony of the Butner experts.

Appellant finally argues that the district court implicitly found that Clark was entitled to release after the first hearing because it ordered the additional evaluations. We reject this argument as well. Nothing in the record indicates that the district court was convinced that defendant was not dangerous. Conversely, the district court made absolutely clear that it disparaged the testimony of the Springfield experts and that if it would have been required to reach a decision based on the evidence presented at the first hearing alone, it would have found that Clark remained dangerous.

Accordingly, this court AFFIRMS the district court's commission of appellant to the custody of the Attorney General pursuant to 18 U.S.C. section 4243.