UNITED STATES of America, Appellee,

v.

Jeffrey Allen STEIL, Appellant.

No. 90–5018.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1990.

Decided Oct. 18, 1990.

Katherian D. Roe, Minneapolis, Minn., for appellant.

Robert M. Small, Minneapolis, Minn., for appellee.

Before McMILLIAN and BOWMAN, Circuit Judges, and BRIGHT, Circuit Judge.

BOWMAN, Circuit Judge.

Jeffrey Allen Steil appeals an order of the District Court[1] granting the government's 18 U.S.C. § 4246 (1988) petition. We affirm.

Born in 1962, Steil has a long history of psychiatric problems. He began having auditory hallucinations at age six and attempted suicide in 1981 and 1985. Also in 1985, shortly after identifying his father as the Green River Killer, Steil had intercourse with his puppy. He then shot, killed, and buried it because he believed it to be a threat to his future children. Steil later exhumed the puppy's body and took it to a veterinarian when he heard voices telling him it was alive. An anxiety attack followed this incident, and Steil was first hospitalized, then committed. He was discharged on December 23, 1985, after being

---

**1.** The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

diagnosed as suffering from paranoid schizophrenia and mixed substance abuse.

In late 1987, Steil began a cross-country journey from his home in Seattle. He planned to travel to New York City to obtain financing for his flying saucer. From there, he hoped to present the plans for his saucer to the government for defense purposes. The trip had another purpose; to track the Green River Killer. Steil believed the Killer had put blood on his bed sheets in Seattle.

On route to the East Coast, Steil was stopped by the state police in northern Ohio. The police found an unregistered, loaded, sawed-off, ten gauge shotgun on the front seat of Steil's car, as well as some marijuana. The arresting officer noted that Steil appeared to have psychological problems, but was cooperative during the arrest. Steil admitted shortening the barrel of the gun.

Steil was interviewed by Special Agents from the Bureau of Alcohol, Tobacco, and Firearms. The agents noted that Steil was agitated, that he had difficulty maintaining a consistent train of thought, and that he did not realize that he was in Ohio. Steil explained to the agents that he previously had been to Washington, D.C. to see the President and wished to give the Chief Executive the plans for his saucer.

Steil was charged with illegal possession of a sawed-off shotgun, a violation of 26 U.S.C. § 5861(d) (1988). On November 5, 1987, the United States District Court for the Northern District of Ohio ordered a psychiatric examination to determine Steil's responsibility for his conduct and mental competence to stand trial. In an order filed February 8, 1988, that court found Steil to be suffering from a mental disease or defect rendering him mentally incompetent to understand the nature and consequences of the proceedings against him or to assist properly in his defense. The court committed him to the custody of the Attor-

ney General for a period not to exceed four months for a determination of the probability of attaining capacity to permit the trial to proceed. On February 23, 1988, Steil was sent to the Federal Medical Center in Rochester, Minnesota [hereinafter FMC].

At an October 13, 1988, hearing, the court found no substantial probability of Steil's attaining capacity to permit trial to proceed in the foreseeable future. The FMC was ordered to examine Steil to determine whether his release would create a substantial risk of bodily injury to another person or serious damage to the property of another. The court considered the matter again on February 28, 1989. It concluded that Steil was suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to other persons. Pursuant to 18 U.S.C. § 4246, Steil was remanded to the custody of the Attorney General for the purpose of finding a suitable state placement.

No suitable state placement was available, and, on May 8, 1989, the government filed in the United States District Court for the District of Minnesota a petition to determine the present mental condition of an imprisoned person due for release pursuant to Section 4246. Filed with this petition were two significant documents: (1) a certificate of mental disease or defect and dangerousness executed by the director of the FMC, Dr. Joseph B. Bogan; and (2) a Pre–Release (Dangerousness) Evaluation.[2] The petition requested a finding of dangerousness and an order committing Steil to the custody of the Attorney General for hospitalization and treatment pursuant to Section 4246.

Pursuant to the petition, a hearing was held before a United States Magistrate.[3] Two government witnesses testified. The Chief of Psychology at the FMC, Dr. Michael R. Furlong, Ph.D. in Clinical Psychol-

---

**2.** The Evaluation presented the findings of a panel of FMC staff members convened to assess Steil's dangerousness. After administering several tests and conducting an interview, the panel diagnosed Steil as having schizophrenia, paranoid type and determined that because of this

mental disease he would create a substantial risk of bodily injury to another person.

**3.** The Honorable Bernard P. Becker, United States Magistrate for the District of Minnesota.

ogy, testified that Steil suffers from paranoid schizophrenia and is dangerous due to his mental illness. This testimony was based upon his own evaluation as well as the opinions of at least four other mental health professionals who found Steil to be mentally ill and dangerous. Dr. Furlong commented that, in his professional opinion, Steil was dangerous because he confused his hallucinations and delusions with the events around him and responds to them as if they are real. As examples, the doctor cited the events surrounding Steil's arrest and the scores of threatening letters Steil has written to public figures. Steil's case manager, Stephen O'Conner, testified that he was unable to locate a suitable state institution willing to accept Steil. Steil, represented by counsel, called no witnesses, nor did he testify.

In his Report and Recommendation, the Magistrate concluded that the government "[had] not shown by clear and convincing evidence that [Steil] should be indefinitely committed to the custody of the Attorney General" and recommended that the government's Section 4246 petition be denied. Report & Recommendation at 19. The Magistrate based this recommendation upon two premises: (1) that there is a tendency to over-predict the potential dangerousness of mentally ill persons; and (2) that Steil had no history of violent behavior toward other people, nor was he convicted of a crime prior to the shotgun incident.

The District Court, after a de novo review of the files, records, and proceedings, disagreed with the Magistrate's recommendation and granted the government's petition. The court observed in its order that at least five mental health professionals had evaluated Steil and found him to be mentally ill and dangerous, and it found that the government had shown by clear

and convincing evidence that Steil remains dangerous to others.

In this appeal, Steil contends that the District Court erred in finding that the government had met its burden of showing by clear and convincing evidence that his release would present a substantial risk of bodily injury to another person or serious damage to the property of another as a result of his mental illness. We disagree.

"Section 4246 provides for the indefinite hospitalization of a person who is otherwise due to be released from commitment but who is suffering from mental disease or defect as a result of which his release would create a substantial risk of harm to the person or property of another." *United States v. Gold*, 790 F.2d 235, 237 (2d Cir.1986). Subsection (d) of Section 4246 states in part:

(d) **Determination and disposition.**—If, after the hearing, the court finds by clear and convincing evidence that the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall commit the person to the custody of the Attorney General.

■ To review the District Court's Section 4246 finding of dangerousness, it is necessary first to determine the governing standard of review. While this precise question apparently has yet to be resolved,[4] this Court has held that under 18 U.S.C. § 4245 (1988), which controls transfers of federal prisoners to mental hospitals, a finding that a prison inmate suffers from a mental disease or defect is a finding of fact and, as such, is subject to the clearly erroneous standard of review. *United States v. Watson*, 893 F.2d 970, 976 (8th Cir.),

---

4. The Eleventh Circuit addressed an analogous issue in *United States v. Clark*, 893 F.2d 1277 (11th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 1833, 108 L.Ed.2d 962 (1990). After being adjudicated not guilty only by reason of insanity of attempted murder charges, the appellant in *Clark* was committed to the custody of the Attorney general pursuant to 18 U.S.C. § 4243 (1988). Section 4243 provides that a person so adjudicated shall be granted a hearing to determine whether his or her release will be dangerous to others or their property. The Eleventh Circuit discussed, but did not decide upon, the standard of review, concluding that "the trial judge was completely justified in finding that [Clark] failed to prove his entitlement to release." *Clark*, 893 F.2d at 1282.

*vacated on other grounds sub nom., United States v. Holmes,* 900 F.2d 1322 (8th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 3243, 111 L.Ed.2d 754 (1990). The clearly erroneous standard is also employed to review a determination regarding a defendant's competence to stand trial. *See, e.g., United States v. Voice,* 627 F.2d 138, 140–41 (8th Cir.1980); *see also Gold,* 790 F.2d at 239–40.

■ "Dangerousness is certainly not an alien term to trial judges." *United States v. Cox,* 719 F.2d 285, 287 (8th Cir.1983), *cert. denied,* 466 U.S. 929, 104 S.Ct. 1714, 80 L.Ed.2d 186 (1984). " 'In bail and sentencing proceedings, trial judges routinely consider ... the potential danger a defendant poses to society.' " *Cox,* 719 F.2d at 287 (quoting *United States v. Schell,* 692 F.2d 672, 675 (10th Cir.1982)). A finding under 18 U.S.C. § 3142(g)(4) (1988) (Bail Reform Act of 1984 with regard to a defendant's potential danger to the community is reviewable under the clearly erroneous standard). *United States v. Maull,* 773 F.2d 1479, 1486–88 (8th Cir.1985); *see also United States v. Hurtado,* 779 F.2d 1467, 1470–73 (11th Cir.1985); *cf. Marino v. Vasquez,* 812 F.2d 499, 509 (9th Cir.1987) (under Fed.R.App.P. 23, which relates to the release on bail of state prisoners seeking habeas corpus relief in federal court, a district court's findings of fact as to a petitioner's potential danger to the community are entitled to a deferential standard of review). Consistent with this authority, we hold that the clearly erroneous standard governs our review of a district court's Section 4246 finding of dangerousness.

■ In the present case, the District Court found that the government has established by clear and convincing evidence that Steil is mentally ill and, if released, would pose a substantial risk of bodily injury to, or serious damage to the property of, another. The record amply supports this finding, and any contention that it is clearly erroneous is without merit. At least five mental health professionals have found Steil mentally ill and dangerous, and there is no medical opinion to the contrary in the record before us.

"It has to be recalled that the government's role here is not that of punitive custodian of a fully competent inmate, but benign custodian of one legally committed to it for medical care and treatment—specifically for psychiatric treatment." *United States v. Charters,* 863 F.2d 302, 312 (4th Cir.1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990). In its custodial role, the government of course must fulfill its statutory duties. Most importantly, the Attorney General must continue to make all reasonable efforts to place Steil in a suitable state facility, *see* 18 U.S.C. § 4246(d), and to prepare annual reports concerning Steil's mental condition and the need for his continued hospitalization. *See* 18 U.S.C. § 4247(e)(1)(B) (1988). We hope that Steil's placement in an appropriate state institution will be arranged soon, but we recognize that such a placement depends upon finding a state institution that is willing to accept Steil. We are confident that the government will continue its efforts in this regard.

The order of the District Court is affirmed.