963 F.2d 377
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well.
UNITED STATES of AMERICA, Appellee,
v.
Thomas DIXON, Appellant.
 No. 91-1761.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: April 14, 1992.
Filed: May 20, 1992.
 
 Before McMILLIAN, FAGG, and BOWMAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 In April 1989, Thomas Dixon began serving a twelve-month sentence for being a felon in possession of a firearm. Initially, Dixon was placed in the general population of the Medical Center for Federal Prisoners (MCFP) in Springfield, Missouri. After displaying inappropriate and bizarre behavior, however, Dixon was referred to the MCFP's diagnostic and observation unit in January 1990. Examiners found Dixon was psychotic and reluctant to receive treatment. The Government then filed a motion for a hearing to determine whether Dixon should be hospitalized. See 18 U.S.C. § 4245(a) (1988). Finding reasonable cause to believe Dixon presently suffered from a mental disease or defect and that treatment required custody in a suitable facility, the district court committed Dixon to the custody of the Attorney General. See id. § 4245(d). Dixon was placed in the MCFP's mental health treatment unit. When the expiration of Dixon's prison sentence approached, the Government requested a hearing to determine whether Dixon's release should be stayed. See id. § 4246(a). On February 5, 1991, the district court found that Dixon's release would create a substantial risk of bodily injury to another person because of a current mental disease or defect, and that no suitable arrangements for state custody and care were available. See id. § 4246(d). Thus, the district court committed Dixon to the custody of the Attorney General indefinitely. See id. Dixon appeals the district court's order committing him under section 4246. We affirm.
 
 
 2
 Section 4246 provides for the indefinite hospitalization of a federal prisoner whose sentence is about to expire, if the Government proves by clear and convincing evidence that the prisoner's release would create a substantial risk of bodily injury to another person because of an existing mental disease or defect. United States v. Steil, 916 F.2d 485, 487 (8th Cir. 1990). Dixon asserts the Government failed to prove by clear and convincing evidence that he presently has a mental disease or defect, or that he is dangerous to others because of a mental disease or defect. Although neither the magistrate judge's recommendation nor the district court's order mentions the clear and convincing standard of proof, they refer to section 4246. Thus, we can infer the district court applied the clear and convincing standard. United States v. Lewis, 929 F.2d 440, 442 (8th Cir. 1991) (per curiam). We review for clear error the district court's findings that Dixon suffers from a mental disease or defect and that Dixon poses a substantial risk of bodily injury to other persons. See id.; Steil, 916 F.2d at 488.
 
 
 3
 A finding that a defendant poses a substantial risk under section 4246 may be based on any activity that shows a genuine possibility of future harm to persons or property. United States v. Sahhar, 917 F.2d 1197, 1207 (9th Cir. 1990), cert. denied, 111 S. Ct. 1591 (1991). Due process does not require a finding that Dixon recently committed dangerous acts. Id. Instead, the recency of dangerous activity is merely a factor for the district court to consider when weighing the evidence. Id.
 
 
 4
 At the section 4246 hearing, the district court found Dixon was mentally ill and dangerous after reviewing the earlier section 4245 hearing and listening to testimony of Dixon and MCFP personnel. The district court also reviewed two conflicting written reports by mental health experts.
 
 
 5
 The first report, an August 1990 prerelease review by a panel of three MCFP mental health experts, concluded Dixon has a mental disease and presents a substantial danger to others because of that disease. The panel initially reported Dixon's psychiatric history. From 1977 to 1979, Dixon was hospitalized three times for mental problems. A psychiatrist intermittently treated Dixon from 1978 to 1981. Dixon was hospitalized again in June 1985. Dixon next entered the MCFP's mental health treatment unit in August 1990, after expressing several delusional ideas. The panel also reported Dixon's history of violence. While on parole in 1988, a warrant was issued for Dixon's arrest because he had threatened to kill his former wife if she did not get a second mortgage on her home and give him half the money. His former wife, however, dropped the charges. Several days later, police arrested Dixon for being a felon in possession of a firearm. While imprisoned at the MCFP in January 1990, Dixon approached a staff nurse and stated, "You have something sick inside you and you had better watch it." During routine telephone monitoring at the MCFP, officials audiotaped Dixon threatening to hurt his former wife and anyone who got in his way. Dixon stated he would "hurt them bad" and would use "lead" if they messed with him. When confronted with this conversation, Dixon asserted he was misunderstood. The panel, however, viewed Dixon's statements to his former wife as a clear expression of paranoid beliefs and intent to commit serious bodily harm. The panel concluded that Dixon suffered from a significant mental illness, schizoaffective disorder with paranoid features. The panel also found Dixon's paranoid delusions "seem[ed] causally related to his increased tendency to act on his irrational thoughts." Thus, the panel concluded Dixon's release would create a substantial risk of bodily injury to another person because of his mental disease.
 
 
 6
 The second report, written in November 1990 by Dr. Burstin, an independent clinical psychologist, concluded Dixon does not present a substantial risk of bodily harm to others because of a mental disease. Dr. Burstin based his opinion on his examination of Dixon and review of Dixon's MCFP files. Dr. Burstin noted that Dixon was evaluated at Malcolm Bliss Hospital in October 1990 for possible placement. Dixon, however, could not be admitted because he was not found to be acutely psychotic or delusional, imminently dangerous to himself or others, or severely impaired. During Dr. Burstin's examination, Dixon asserted he was not dangerous, did not need medication, and should simply be released. When Dr. Burstin reminded Dixon of his taped threat of his former wife, Dixon responded that his arguments with her had been over for months. Dixon contended his statement to the nurse was misquoted and misinterpreted. Based on his examination and testing, Dr. Burstin concluded Dixon had a mixed personality disorder, with antisocial and paranoid features. Dr. Burstin found it was unclear that Dixon's threat to his former wife corresponded with a delusion or other mental disorder, and that there was no evidence of corresponding assaultive or dangerous behavior. Dr. Burstin concluded there was no compelling evidence that Dixon presented a substantial risk of bodily injury to another because of a mental disease or defect.
 
 
 7
 Reviewing the evidence in the light most favorable to the Government, we conclude a rational trier of fact, applying the clear and convincing standard of proof, could have found Dixon suffered from a mental disease and presented a danger to others because of that disease. See id. at 1208. Dixon has a fifteenyear history of mental problems and the MCFP personnel who observed him for nearly a year believe he has a severe mental disease. In addition, Dixon engaged in conduct showing a genuine possibility of future harm to other persons. During his evaluation and treatment, Dixon verbally threatened his former wife with bodily harm, exhibited antisocial behavior, and could not control his temper and emotions when discussing his mental condition. Thus, the district court's findings are not clearly erroneous.
 
 
 8
 Two days after the district court entered the February 5 order committing Dixon indefinitely under section 4246, the Government filed a new MCFP prerelease review conducted in January 1991. At the hearing before the magistrate, the Government had agreed to file this review. In the new review, the panel noted that after the August 1990 report, Dixon had been taken off psychotropic medications and had improved. Although Dixon expressed anger about being hospitalized, his behavior was appropriate without adverse incidents. Dixon's verbalizations returned to normal. Dixon, however, denied ever having mental problems and accepted no responsibility for his past actions. Dixon also stated that neither his former wife nor a former doctor "would get away with having slandered him because he intended to sue them," but that he would accept the court's decision even if he did not agree with it. The panel found Dixon continued to suffer from a significant mental illness, schizoaffective disorder with paranoid features in partial remission. The panel also found it was unlikely that Dixon could inhibit inappropriate behavior, including possible violent acts, given the intensity of his obsession with people in his past and his lengthy history of mental illness. Thus, the panel concluded Dixon's release would create a substantial risk of bodily injury to another person due to his mental disease.
 
 
 9
 Dixon asserts the new report shows his condition has improved and he is not dangerous. The new panel, however, concluded Dixon still presents a danger to others because of a mental disease. In addition, the district court did not consider the new report before committing Dixon indefinitely. The new report, or more recent reports, may be used in a later hearing to decide whether Dixon should be released. Dixon's counsel or guardian may file a motion for a hearing to decide whether Dixon should be discharged. 18 U.S.C. § 4247(h) (1988). Further, if the MCFP director decides Dixon has recovered, the director must file a certificate with the district court. Id. § 4246(e). Finally, "the Attorney General must continue to make all reasonable efforts to place [Dixon] in a suitable state facility, and to prepare annual reports concerning [Dixon's] mental condition and the need for his continued hospitalization." Steil, 916 F.2d at 488 (citations omitted).
 
 
 10
 Accordingly, we affirm.