**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Petitioner-Appellee,

v.                                                              No. 95-7775

ALEX ANDERSON,
Respondent-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, District Judge.
(CA-93-552-HC-BR)

Argued: October 30, 1996

Decided: December 23, 1996

Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** George Alan DuBois, Assistant Federal Public Defender,
Raleigh, North Carolina, for Appellant. Fenita Talore Morris,
OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North
Carolina, for Appellee. **ON BRIEF:** Janice McKenzie Cole, United
States Attorney, Barbara D. Kocher, Assistant United States Attorney,
Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant, Alex Anderson, was convicted of mailing threatening communications to a female television newscaster, and was sentenced to three years in prison. Shortly before Anderson's scheduled release date, the government moved to commit Anderson to the custody of the Attorney General, pursuant to 18 U.S.C. § 4246 (1985) on the ground that Anderson was suffering from a mental illness, and his release would pose a danger to others. The district court granted the government's motion and committed Anderson pursuant to § 4246.

About a year and a half later, Anderson filed a motion, pursuant to 18 U.S.C. § 4247(h) to determine whether Anderson still met the criteria for commitment under § 4246. Again, the district court concluded that Anderson should still be confined pursuant to § 4246. Anderson now appeals.

I.

FACTS AND PROCEDURAL HISTORY

While serving his sentence on an assault conviction, [1] Anderson began mailing threatening letters to a female television newscaster, Cora-Ann Mihalik. On August 18, 1992, Anderson pled guilty to mailing threatening communications to Ms. Mihalik, and was sentenced to three years in federal custody.[2] After his guilty plea, and

_____

[1] The assault conviction stems from Anderson's striking of a man in the head and face with a steel pipe, breaking the victim's front teeth.
[2] By way of background, after being charged with mailing threatening communications, Anderson underwent a competency and criminal responsibility evaluation at USMCFP-Springfield, Missouri, where he was diagnosed with paranoid schizophrenia. After treatment with antip-

2

sentencing, Anderson was admitted to the Mental Health Division of the Federal Correctional Institution for service of his sentence, which would expire on September 2, 1993. On August 25, 1993, Anderson's prospective probation officer contacted the doctors at FCI-Butner and informed them that Anderson had sent Ms. Mihalik two greeting cards in May, 1993.

Although Dr. Thomas Owens, Anderson's primary physician, initially concluded that Anderson's release would not pose a danger to others or the property of others, after being informed that Anderson had contacted Ms. Mihalik, in direct contravention of the court's order prohibiting any contact, Dr. Owens reconsidered his opinion, and ultimately concluded that Anderson should not be released. Thereafter, the authorities at FCI-Butner initiated proceedings, pursuant to 18 U.S.C. § 4246 to have Anderson committed to the custody of the Attorney General.

On October 4, 1993, the district court held a hearing, pursuant to 18 U.S.C. § 4247(d) to determine whether Anderson was suffering presently from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another. Based on the evidence presented at the hearing, the district court found by clear and convincing evidence that Anderson's release would create a substantial risk of danger to others. Accordingly, the district court committed Anderson to the custody of the Attorney General, pursuant to § 4246.[3]

_____

sychotic medications he was found competent and first entered a guilty plea on January 31, 1991. Thereafter, while Anderson awaited sentencing, he stopped taking his medication and experienced a decompensation in his chronic illness. As a result, on July 22, 1991, he was admitted to the Mental Health Division of FCI-Butner, North Carolina for competency restoration, assessment of competence to enter a plea and competence to be sentenced. Following a period of hospitalization, treatment, and stabilization he was determined competent and entered a guilty plea on August 18, 1992, and was subsequently sentenced.

[3] Anderson appealed the district court's order, and on January 4, 1995, the Fourth Circuit affirmed the district court. United States v. Anderson, No. 93-7218 (4th Cir. Jan. 4, 1995).

About two years later, Anderson's doctors concluded that Anderson's condition had improved to the point that Anderson could be conditionally released from FCI-Butner. A conditional release plan was formulated and finalized for the district court's approval. The conditional release plan provided that Anderson was to undergo continuous psychiatric treatment, continue to take his medication, live with his mother in Indiana, maintain active participation in a regimen of outpatient mental health care, report to his probation officer, and additional standard provisions contained in conditional releases. At the same time, Anderson filed a motion, pursuant to 18 U.S.C. § 4247(h), for a hearing to determine whether Anderson still met the criteria for commitment under § 4246.**4**

Anderson's release plans were foiled, however, when a security representative from the Cable News Network (CNN) contacted the authorities at FCI-Butner and told them that Anderson had written two letters to one of its female newscasters, whom Anderson had never met.**5** As a result, the doctors at FCI-Butner withdrew the condi-

---

**4** If Anderson persuaded the district court that confinement under § 4246 was no longer appropriate, Anderson would be unconditionally discharged from his § 4246 confinement, and would begin serving his supervised release term for the underlying offense, as opposed to a conditional release.

**5** One of these letters provides:

> Dear Debra. I hope this letter compels you to act in a responsible way. I have not -- I did not get out of prison on my scheduled release date and as you are already aware, September 2, 1993, cannot return to New York when I have a place-- when I have no place to stay. Because I have served all of my time, 46 months, I can be released any time after the Court reviews my conditional release plan. The woman counsellor here is responsible for clarifying your address and this is done normally by a telephone connection. She will have a few questions to interpose, such as do you have any prior convictions. I will be in the office when the -- I'll be there when the matter's called. This will be in the evening but that I can -- but I am confident you can handle this. Understand there are no alternatives, this is it. I can only come back to New York providing that the District Court approves my residential plan. Don't be [expletive] afraid to write me that I can answer any questions or any additional questions. Alex. P.S. The plan is that I will be living with you.

4

tional release plan. Moreover, the Probation Office of Indiana rejected FCI-Butner's request that Anderson be placed with his mother.**6** Thus, conditional release to the State of Indiana was not possible.

On June 26, 1995, a hearing was held before United States Magistrate Judge Alexander B. Denson. At the hearing, Dr. Jim Mann, a psychologist at FCI-Butner testified that in his opinion Anderson:

> remains dangerous due to a mental disease or defect to others or property in that he needs around the clock supervision to prevent his potential acting out his delusions about having a special relationship with TV personalities. He's shown the tendency to act on bad judgment in the past and we're concerned he may act on those delusions and bad judgment in the future.

On cross-examination, Dr. Mann acknowledged that a conditional release plan had been formulated for Anderson, and that the release plan was withdrawn after CNN contacted the authorities at FCI-Butner.**7** Anderson testified on his own behalf. Anderson denied the presence of any mental illness; stated that he would continue to take his medication after release; and that he intended to live with his mother and work as an electrician. Anderson also relayed to the court his belief in mental telepathy.

_____

**6** The Probation Officer reasoned that:

> Considering all the information that has been provided to our office concerning [Anderson's] prior criminal history and mental health condition, it is felt that supervision can not be provided to insure the safety of this community and [Anderson]. His mother informed this officer that she has not seen her son in over ten years and the last time he lived with her was in 1983 for approximately one week after his release from a state correctional institution. She further indicated that she has never been responsible, nor provided care for any one with [Anderson's] mental condition. However, she felt that her religious beliefs would provide her the necessary guidance in providing for him.

**7** Anderson also claims that Dr. Mann admitted that Anderson's primary physician, Dr. Owens, was aware prior to the decision to conditionally release Anderson, that Anderson had been in contact with a CNN newscaster.

On June 28, 1995, the magistrate judge found that Anderson was mentally ill and dangerous, and recommended continued placement pursuant to 18 U.S.C. § 4246. Anderson filed timely objections to the magistrate's report. On October 16, 1995, the district court held another hearing to consider Anderson's motion. Again, Dr. Mann testified for the government. Dr. Mann testified that Anderson's condition had deteriorated since the June, 1995 hearing; and Anderson had discontinued taking anti-psychotic medication. Dr. Mann reiterated his belief that Anderson suffered from a mental illness, and that his release would pose a danger to others.

During cross-examination, Anderson sought to challenge Dr. Mann's conclusion that Anderson was mentally ill by demonstrating that he [Anderson] could act in a rational manner. Anderson also questioned Dr. Mann about his conclusion that Anderson's belief in telepathy was delusional.[8] On cross-examination by Anderson's appointed counsel, Dr. Mann admitted that Anderson had not been involved in any physical altercations during his stay at FCI-Butner, and also that Anderson's physicians had yet to find a suitable medication or dosage to treat Anderson's condition.

At the conclusion of the hearing, the district court found by clear and convincing evidence that Anderson did suffer from a mental disease or defect, as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another. District Court Order, October 17, 1995, at 1 ("Order"). Accordingly, the district court ordered that Anderson remain in the custody of the Attorney General pursuant to the provisions of 18 U.S.C. § 4246. The instant appeal followed.

II.

DISCUSSION

The instant appeal focuses on 18 U.S.C. § 4246. That statute provides, in relevant part:

_____

[8] Anderson suffers from a firmly entrenched delusional system which includes the belief that he possesses telepathic powers which allow him to have relationships with certain individuals who appear on television.

6

> If the director of a facility in which a person is hospitalized certifies that a person whose sentence is about to expire, or who has been committed to the custody of the Attorney General pursuant to section 4241(d), or against whom criminal charges have been dismissed solely for reasons related to the mental condition of the person, is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for state custody and care of the person are not available, he shall transmit the certificate to the clerk of the court for the district in which the person is confined . . . . The court shall order a hearing to determine whether the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another.

18 U.S.C. § 4246(a).

> If, after the hearing, the court finds by clear and convincing evidence that the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another, the court shall commit the person to the custody of the Attorney General.

18 U.S.C. § 4246(d).

Initially, Anderson was committed under § 4246(d) in October, 1993. Thereafter, Anderson filed a motion to determine his present mental condition, pursuant to 18 U.S.C. § 4247(h).[9] Pursuant to 18

_____

[9] Section 4247(h) provides:

> Regardless of whether the director of the facility in which a person is hospitalized has filed a certificate . . . counsel for the person may, at any time during such person's hospitalization, file with the court that ordered the commitment a motion for a hearing to determine whether the person should be discharged from such facility . . . .

7

U.S.C. § 4246(e), which provides for a hearing upon motion for discharge, if the court finds by a preponderance of the evidence that the person has recovered from his mental disease or defect to such extent that his release would no longer create a substantial risk, he must be discharged.[10]

A. Standard of Review

The district court's determination that Anderson continues to suffer from a mental illness or defect and his release would create a substantial risk will not be overturned on appeal unless that finding is clearly erroneous. See United States v. Steil, 916 F.2d 485 (8th Cir. 1990) (district court's finding of dangerousness under§ 4246 is reviewed under the clearly erroneous standard).

B. Parties' Arguments

The parties agree that Anderson suffers from a mental illness. The parties' positions diverge, however, with respect to the second prong of the § 4246 test, namely whether Anderson has recovered from his mental illness to such an extent that Anderson's release would not create a substantial risk of harm to others or the property of others. See 18 U.S.C. § 4246(e).

Anderson argues that the evidence does not support the district court's finding that Anderson's release would pose a substantial risk of harm to others. Specifically, Anderson contends that no evidence has been offered that Anderson engaged in any serious violent or assaultive behavior while committed at FCI-Butner. In fact, while at FCI-Butner, Anderson has compiled a stellar work record as an electrician, and has furthered his education. Anderson maintains that he has also been generally compliant with his regimen of psychiatric treatment prescribed for him.

_____

[10] The court may also order that the person be conditionally discharged under a prescribed regimen of medical, psychiatric, or psychological care or treatment that has been prepared for him, and order as an explicit condition of release that the person must comply with the prescribed regimen. See 18 U.S.C. § 4246(e)(2)(A) and (B).

Moreover, Anderson maintains that he will be placed on supervised release for three years, and can be required to undergo any mental health treatment as a condition of his supervised release. Anderson also notes that in May, 1995, Anderson's doctors concluded that his condition had improved to the point where he could be released, and as such, a formal plan for his conditional release was completed. While conceding that the conditional plan was revoked after Anderson's improper contacts with a CNN newscaster were revealed, Anderson claims that the revocation of the conditional release plan was unfair and ill-considered.

Specifically, Anderson claims that, according to progress notes, Anderson's primary physician, Dr. Owens, was aware at the time that Dr. Owens concluded that Anderson could be conditionally released, that Anderson had contacted a CNN newscaster. Since the decision to withdraw the conditional release plan was made only after CNN contacted the authorities at FCI-Butner, Anderson suggests that the decision to withdraw the plan may have been due to the "added pressure brought to bear on the doctors as a result of the official contact by the CNN representative."

Furthermore, while conceding that the two letters sent by Anderson to the CNN newscaster were "inappropriate and would undoubtedly be unnerving to the recipient," Anderson maintains that the letters were in no way threatening or violent. As such, the two letters do not demonstrate that Anderson is dangerous. In addition, Anderson contends that while the delusional component of Anderson's mental illness will likely never be eradicated, Anderson's continuing delusions does not mean that Anderson's mental illness can not be managed, and that Anderson is a danger to others. Thus, Anderson maintains that given his improved mental status, the lack of any violence associated with his mental illness, and the close supervision Anderson will undergo during his three years of supervised release, under these circumstances, the district court's finding that Anderson's release would pose a substantial risk of harm is clearly erroneous.

In contrast, the government maintains that no evidence has been presented by Anderson to demonstrate that Anderson has recovered to any extent from his mental illness which generated his commitment under § 4246. As a corollary to that matter, nor has any evidence been

9

offered to show that Anderson's release would not pose a substantial risk of harm to others. The government notes that Anderson continues to have obsessive relationships with television personnel he has never met, corresponding with them and expressing bizarre beliefs about his relationships with them. In addition, the government argues that Anderson has been engaged in verbally threatening and intimidating behavior toward staff and inmates at FCI-Butner. According to the government, prior the June, 1995 meeting held before the magistrate judge, Anderson had been placed in seclusion four times, three of which were for hostility, belligerence, or verbal altercation.**11**

Furthermore, the government argues that the district court required the government to show, by clear and convincing evidence, rather than by a preponderance of the evidence, that Anderson had not recovered from his mental illness and continued confinement was required.**12** Here, the government maintains that evidence was intro-

_____

**11** Dr. Mann testified at the June, 1995 hearing that:

> [Anderson] has shown a marked disregard for others. His anger has escalated in several occasions in which he was verbally abusive to other staff and inmates . . . He has also been observed with his psychotic symptoms coming back into play. He was diagnosed as a paranoid schizophrenic with ideals of rage regarding a delusion of telepathic powers. In other words, he believes that he can communicate to newscasters, female newscasters, on the t.v., that he can hold a communication with them, receive messages from them directly on the t.v., and then he will write them letters and correspond with them. And in the past that has led to at least one or two romantic relationships in his mind between the female newscasters. He has been observed talking to the t.v., holding a conversation with the t.v., by unit officers and other staff. And we're concerned that he's going back into that mode again . . . his delusions continue to be very fixed and rigid, and unchanged.

**12** The government's argument is persuasive. The statute places the burden on the petitioner to demonstrate by a "preponderance of the evidence that [he/she] has recovered from his[/her] mental disease or defect to such an extent . . . ," not on the government to demonstrate the recovery by clear and convincing evidence. Initially, to commit a person, pursuant to § 4246(d), the government must show by clear and convincing evi-

duced before the district court which demonstrated that Anderson continues to have a fixation with female newscasters, including his correspondence with them despite the maximum control of the prison setting and direct admonitions not to do so, as well as the verbal and abusive behavior of Anderson toward staff and other inmates.

Moreover, the government argues that the fact that Anderson has not acted upon any of his delusions is not persuasive because he has been incarcerated, and has not had an opportunity to act upon his delusions. In support of its position, the government notes that Anderson physically threatened and stalked the last known victim prior to his incarceration. The government contends that"the evidence indicates [Anderson] would pick up, albeit with a different victim perhaps, right where he left off."

Since the standard of review if anything favored Anderson too much, the district court's decision is more than adequately supported

_____

dence that the person is presently suffering from a mental disease or defect of which his release would create a substantial risk of injury to others or property. In October, 1993, the government satisfied the burden, and Anderson was committed.

Section 4246(e) provides the mechanism by which a person who has been committed previously, pursuant to § 4246(d), may regain his/her liberty. As such, under § 4246(e), the petitioner's standard to show recovery is the lesser standard, preponderance of the evidence. Here, the district court found by clear and convincing evidence that Anderson continues to suffer from a mental disease or defect and that his release would pose a substantial risk to others. Order, at 1.

Apparently, the district court treated the § 4246(e) hearing, as a § 4246(d) hearing, and again, required the government to show by clear and convincing evidence that Anderson is presently suffering from a mental disease or defect, as provided in § 4246(d). Since the district court was acting not on the original commitment, but upon Anderson's motion for discharge, under § 4246(e), the district court's inquiry should have been whether the district court could find by a preponderance of the evidence that Anderson has recovered from his mental disease or defect to such extent that his release would no longer pose a substantial risk to others. In any event, the error, if any such error exists is harmless.

11

by the record. Section 4246(e) requires the district court to: (1) find by a preponderance of the evidence that Anderson has recovered from his mental disease or defect to the such an extent that, and (2) that Anderson's release or conditional release would no longer create a substantial risk of bodily injury to another person or serious damage to property.

As for the first prong, Anderson's "evidence" is unpersuasive. Anderson's argument is that while he still suffers from a mental illness, he does not pose a danger. Anderson contends that his doctors have not been able to find the right medication or dosage to address his condition, and in essence, he is not to blame for his continued mental illness.

While that may be true, the fact remains that the mental illness persists and Anderson was convicted for mailing threatening communications to female newscasters. Anderson was instructed not to have any contact with female newscasters. Despite the prohibition on contact with female newscasters, Anderson has on two separate occasions, once in May, 1993, and again, sometime in 1995 prior to the hearing held by the magistrate judge, contacted female newscasters. Moreover, Anderson continues to believe he has telepathic powers permitting communication with female newscasters, and his letter to Debra at CNN conclusively demonstrates the nature of his delusions.

None of the evidence offered by Anderson demonstrates that Anderson has recovered to such an extent that Anderson's release would no longer create a substantial risk of bodily injury to others or property. In fact, the evidence weighs heavily in favor of the opposite conclusion. Anderson's conduct with respect to a female newscaster in New York landed him in jail, and the district court found correctly that Anderson's continued engagement in the very conduct that resulted in his arrest and conviction would pose a danger to others if Anderson were released.

As for Anderson's evidence on the second prong, again, the evidence is unpersuasive. In fact, Anderson's own doctors do not support his release, nor was the Probation Office of Indiana willing to support Anderson's release.

Accordingly, the judgment should be

AFFIRMED.

12