**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 97-6902

MARCUS MICOLO,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-97-235-5-BR-2)

Submitted: February 17, 1998

Decided: March 6, 1998

Before WIDENER, MURNAGHAN, and WILLIAMS,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William Arthur Webb, Federal Public Defender, G. Alan DuBois,
Assistant Federal Public Defender, Raleigh, North Carolina, for
Appellant. Janice McKenzie Cole, United States Attorney, Anne M.
Hayes, Assistant United States Attorney, Michael D. Bredenberg,
Special Assistant United States Attorney, Raleigh, North Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Marcus Micolo was committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4245 (1994). A person may be committed under § 4245 only if the district court finds by a preponderance of the evidence that the inmate suffers from a mental disease or defect which requires custody for care or treatment in a suitable facility. See United States v. Baker, 45 F.3d 837, 840 (4th Cir. 1995). We review the district court's determination for clear error. See United States v. Steil, 916 F.2d 485, 487 (8th Cir. 1990).

In 1996, Micolo was sentenced to eighty-seven months at FCI-Raybrook following a conviction for bank robbery. While at FCI-Raybrook, Micolo developed grandiose and paranoid religious preoccupations and reported auditory hallucinations of God and Satan that resulted in his being disruptive in the prison chapel. Micolo also refused to eat because he believed his food was poisoned. In March 1997, Micolo was transferred to FCI-Butner because of concern for his mental status. Shortly thereafter, the government filed a motion to commit Micolo to the custody of the Attorney General for psychiatric care and treatment pursuant to § 4245. The district court held a hearing on May 1, 1997, and ordered that Micolo be committed pursuant to § 4245.

On appeal, Micolo argues that there was insufficient evidence to show that he was mentally ill. At the hearing, Micolo's treating psychiatrist, Dr. Bryon Herbel, testified on behalf of the government. Herbel reviewed for the court Micolo's history of psychiatric illness. In 1995, as a result of Micolo's psychosis, he destroyed government property, smeared feces around his cell, and assaulted the staff at the federal penitentiary in Atlanta, Georgia. Also in 1995, as a pretrial inmate at FCI-Butner, Micolo was extremely psychotic and disruptive causing him to be held in four-point restraints and treated involuntarily with Haldol, an anti-psychotic medication.

2

Herbel then testified as to Micolo's recent behavior at FCI-Butner. Though Micolo had been less disruptive, he continued to express paranoid and grandiose preoccupations. Micolo reported visual and auditory hallucinations and claimed that God had given him the cure for AIDS in the form of honey made from pine cones. Micolo also claimed that God told him that his destiny was to be beheaded in front of the Sanhedrin.* Upon arrival at FCI-Butner, Micolo refused to submit to admission laboratory tests, claiming that his blood was not his to give away because it was God's, and he did not eat for seven days due to a perceived need for purification. Dr. Herbel concluded that Micolo's mental status was at risk of deterioration due to his delusions and preoccupations. On cross-examination, Dr. Herbel opined that Micolo's behavior crossed the line between genuine religious beliefs and mental illness.

Further evidence presented at the trial included a psychiatric evaluation by Dr. Billy Royal, conducted at the request of Micolo's counsel. Dr. Royal concluded that Micolo suffered from Schizoaffective Disorder, Bipolar type. Dr. Royal noted that Micolo experienced visual hallucinations and that his insight and judgment "were essentially nil." Dr. Royal concluded that Micolo's ongoing psychosis has been evident for several months, and his prognosis appeared to be guarded for any long term improvement or stability. The Doctor recommended treatment in the form of anti-psychotic medication. Micolo also testified on his own behalf. He stated that his new found faith would enable him to stay out of trouble and that he experienced having visions but denied any delusional thinking. The district court found by a preponderance of the evidence that Micolo suffered from a mental disease or defect. See Baker, 45 F.3d at 840.

No medical evidence was introduced to show that Micolo should not be committed. The only mental health experts to address the issue, Drs. Herbel and Royal, are in agreement that Micolo suffers from a mental illness and that treatment is necessary. Thus, we find that the district court did not clearly err in finding that Micolo suffers from a mental disease or defect necessitating custody for care and treatment. We therefore affirm the district court's order.

_____

*The supreme legislative council and highest ecclesiastical and secular tribunal of the ancient Jews, exercising authority until A.D. 70.

3

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

4