IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

NO. 93-1106
_____


UNITED STATES OF AMERICA,

                    Plaintiff-Appellee,


                    versus


ROBERT ALLEN JACKSON,

                    Defendant-Appellant.



_____

Appeal from the United States District Court
for the Northern District of Texas
_____

(April 19, 1994)



Before HENDERSON,* SMITH, AND EMILIO M. GARZA, Circuit Judges.


HENDERSON, Circuit Judge:

_____
* Circuit Judge of the Eleventh Circuit, sitting by designation.


     Robert Allen Jackson appeals from an order of the United
States District Court for the Northern District of Texas denying

his request for conditional release from his commitment pursuant to the provisions of 18 U.S.C. § 4243(a) to a "suitable facility," and directing that he be entrusted to the custody of the Attorney General under 18 U.S.C. § 4243(e).[1]  We affirm.

## I.  BACKGROUND

After robbing a bank teller at gunpoint, Jackson was charged with violating 18 U.S.C. § 2113 (a) and (d) (bank robbery), 18 U.S.C. § 924(c)(1) (using or carrying a firearm during and in relation to a crime of violence) and 18 U.S.C. § 922(g)(1) (possession of a firearm by a convicted felon).  He was subsequently diagnosed as suffering from paranoid schizophrenia and was acquitted of the charges by reason of insanity.  In compliance with 18 U.S.C. § 4243(a),[2] the district court then ordered that he be hospitalized for a determination of whether his release would create a substantial risk of bodily injury to the person or property of another due to his mental condition.

This assessment took place at the United States Medical Center for Federal Prisoners in Springfield, Missouri ("Medical Center").

---

[1]The district court's order is a final appealable order within the meaning of 28 U.S.C. § 1291.  See United States v. Clark, 893 F.2d 1277, 1280 n.3 (11th Cir.), cert. denied, 494 U.S. 1090, 110 S.Ct. 1833, 108 L.Ed.2d 962 (1990).

[2]Section 4243(a) directs that "[i]f a person is found not guilty only by reason of insanity at the time of the offense charged, he shall be committed to a suitable facility until such time as he is eligible for release pursuant to subsection (e)."  18 U.S.C. § 4243(a).  Subsection (e) requires commitment to the custody of the Attorney General if, after a hearing, the court fails to find that his "release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect."  18 U.S.C. § 4243(e).

According to a report prepared for the court by a review panel consisting of staff psychologists David L. Reuterfors, David F. Mrad and Christina A. Pietz, Jackson began hearing the voice of someone he referred to as "Buddy" during a 1989 state incarceration in Texas for a convenience store robbery. He became suspicious of others, whom he perceived were trying to threaten or poison him, and was prone to outbursts of intense anger, which sometimes resulted in physical altercations. After his release, he continued to suffer from auditory hallucinations. He claimed that "Buddy" commanded him to purchase the gun he used in the bank robbery and to rob the bank.

Jackson has been hospitalized three times for mental health evaluations. His initial examination at the Medical Center occurred between December 12, 1991 and January 24, 1992 to determine his competency to stand trial. During this period, the staff observed him actively responding to auditory hallucinations on numerous occasions. When confronted about his behavior, he became increasingly hostile and at one point, broke out a window pane in his cell. He was placed in locked status after throwing an inmate, who had resisted his sexual advances, against a wall. He indicated to the staff that the voice directed his actions. This behavior led to a diagnosis of chronic schizophrenia, paranoid type. The Medical Center staff concluded at that time that Jackson was unable to understand the nature of the charges against him or to assist properly in his own defense.

He was readmitted to the Medical Center on April 9, 1992, in an effort to determine if his competency had been restored and was again placed in locked status for observation. His auditory hallucinations were reduced and eventually eliminated after he began taking Mellaril, a psychotropic medication. He was cooperative with the staff and moved to a less restrictive environment. By the end of this period of hospitalization on July 15, 1992, he had stopped exhibiting a thought disorder and his schizophrenia was considered to be in remission. It was after this admission for observation that he was found not guilty by reason of insanity on August 6, 1992, of the criminal charges alleged in the indictment. He was then returned to the Medical Center for another examination.

This third admission, during which time Jackson continued to take Mellaril, was for the purpose of assessing his dangerousness as mandated by § 4243. The review panel reported to the court that it was "highly likely" that Jackson's violent behavior stemmed from paranoid delusions. (R1-111). It also opined that he presented a risk of danger to others due to his mental illness, which could be viewed as "substantial" if he were not properly monitored upon release to outpatient psychiatric treatment. (Id. at 113). Nevertheless, the panel recommended that he be released from confinement, conditioned upon such outpatient treatment, because "when medicated, his condition improves such that he can function appropriately without incident." (Id.). The panel also observed, however, that:

4

> Jackson was unable to understand the relationship of the lessening of his psychotic symptoms to his taking medication. Mr. Jackson never provided an adequate response to what actions he would take if his psychotic symptoms reappeared. Again, this suggested Mr. Jackson was not quite willing to accept he indeed had a mental illness.
>
> During questions designed to understand his history of potentially dangerous behavior, Mr. Jackson candidly explained incidents where he acted violently. However, Mr. Jackson was not quite willing to admit that his behavior was connected to his mental illness. He was willing, however, to admit that he had experienced some difficulties with "Buddy," and he referenced the recent bank robbery.
>
> In summary, Mr. Jackson presented himself as an individual who demonstrated limited insight into his mental illness and was not willing to admit a need for continued psychiatric care which would include psychotropic medication.

(Id. at 112). The panel stressed that, if he were released, it would be necessary to continually monitor Jackson's compliance with recommended treatment because those who suffer from schizophrenia sometimes discontinue their medication due to its episodic nature. (Id. at 113).

After the foregoing report was prepared, Jackson was accused of another attempt to sexually assault a fellow inmate. The government then moved for a supplemental psychiatric examination. Jackson opposed the motion, stating that the Medical Center staff was aware of the allegations, but continued to recommend that he be released with proper supervision. The court denied the government's request and scheduled a hearing as required by 18 U.S.C. § 4243(c).

5

At the hearing, Dr. Pietz testified on Jackson's behalf.  She explained that schizophrenia is a lifelong illness, which can be controlled only with the proper dosage of psychotropic medication.  She added though that, even after a patient has been stabilized, the medication can become ineffective - that it can work on one day and not another.  She acknowledged that Jackson's violent episodes were triggered at times by paranoid delusions and that he continued to be dangerous, as evidenced by the alleged post-evaluation attack on the other inmate.  In her opinion, however, Jackson's ongoing dangerousness was not due to his mental illness, which was in remission, but was the result of an untreatable antisocial personality.  She indicated that, although another dangerousness evaluation was not conducted after this last violent episode, she and the Medical Center staff continued to follow Jackson's condition and maintained their belief that his schizophrenia was in remission.  Dr. Pietz also testified that Jackson had a good history with respect to taking psychotropic medication, but she indicated that his medical record revealed he had refused at some point to take Motrin, a medication which had been prescribed to him for pain.

After considering the foregoing information, the district court determined that Jackson failed to prove by clear and convincing evidence that he was eligible for release.  In reaching this conclusion, the court took into account the fact that he had not been reevaluated for dangerousness after the second alleged sexual assault.  The court noted that the diagnosis of

6

schizophrenia was based in part on a similar violent episode and found, contrary to Dr. Pietz's opinion, that this behavior could indicate an erroneous evaluation of remission or a reemergence of mental illness. The court also observed that the panel's statement that Jackson could function without incident when medicated no longer held true. Without another evaluation, the court was unwilling to release Jackson as being no longer a danger to the community due to a mental illness. In addition, the court found that even if Jackson's illness were in remission, he failed to show by clear and convincing evidence that such remission would be maintained through compliance with his medication regimen. Having found that Jackson failed to carry his burden of proof, the court ordered that he be committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4243(e).

## II. DISCUSSION

We are first confronted with the appropriate standard of review to apply to the district court's order. The government maintains that this appeal turns on factual findings which must be affirmed unless clearly erroneous. Jackson argued in his brief that we are faced with a mixed question of law and fact subject to de novo review. At oral argument, however, he retreated from this position and stated that he agreed with the government. Only one other circuit has definitively answered this question before us. See United States v. Steil, 916 F.2d 485, 487-88 (8th Cir. 1990) (holding that the clearly erroneous standard applies to review a district court's determination of dangerousness under § 4243). We

now join the Eighth Circuit Court of Appeals and hold that the district court's conclusion that Jackson failed to prove he was entitled to release is a finding of fact which can be reversed only if clearly erroneous.

Under § 4243(d), it was Jackson's burden to prove "by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect."[3]  18 U.S.C. § 4243(d).

> Clear and convincing evidence is "that weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts' of the case."

United States v. Barton, 992 F.2d 66, 69 n.6 (5th Cir. 1993) (quoting In re Medrano, 956 F.2d 101, 102 (5th Cir. 1992) and Cruzan v. Director, Mo. Dept. of Health, 497 U.S. 261, 285 n.11, 110 S.Ct. 2841, 2855 n.11, 111 L.Ed.2d 224, 246 n.11 (1990)).  We have no trouble finding that the district court was not clearly

---

[3]The "clear and convincing evidence" standard is invoked when the underlying offense of a person found not guilty by reason of insanity is "an offense involving bodily injury to, or serious damage to the property of, another person, or involving a substantial risk of such injury or damage."  18 U.S.C. § 4243(d). In all other instances, an acquittee must prove his lack of dangerousness by a preponderance of the evidence.  Id. Jackson's criminal behavior, which included armed bank robbery, involved a substantial risk of injury or damage to the person or property of another.

8

erroneous in concluding that Jackson failed to carry his burden of proof.

Jackson concedes that his release would pose a threat to the safety of others. He claims he is entitled to be discharged, however, because the evidence shows that his current dangerousness stems from an antisocial personality rather than schizophrenia and that he can be held legally only if his violent behavior is "due to a present mental disease or defect." The district court was justified, however, in rejecting the panel's opinion that Jackson's mental illness was in remission.

"Fact finders are entitled to make credibility determinations about witnesses, even expert witnesses. '[T]he questions of the credibility and weight of expert opinion testimony are for the trier of facts, . . . such testimony is ordinarily not conclusive even where it is uncontradicted.'" Id. at 69 (quoting Mims v. United States, 375 F.2d 135, 140 (5th Cir. 1967)). As the district court noted, Jackson's post-evaluation behavior included a violent encounter similar in kind to the assault he perpetrated during his first hospitalization. The court correctly attached no weight, therefore, to the panel's determination that he can "function without incident" when medicated. Dr. Pietz testified at the hearing that she believed the latter assault was the result of Jackson's antisocial personality rather than a recurrence of auditory hallucinations because he failed to display other symptoms of schizophrenia, such as disorganized thinking, mistrust of others and inadequate hygiene. Even so, Dr. Pietz also acknowledged that

9

the psychotropic medication, upon which Jackson's alleged remission is entirely dependent, can work one day and not another. We cannot say, on the record before us, that the district court clearly erred in concluding that the diagnosis of remission was faulty, or that the second assault could have been caused by a reemergence of mental illness.

We find no merit in Jackson's contention that the court improperly ignored Dr. Pietz's testimony that another dangerousness evaluation was unnecessary because she and the Medical Center staff continued to monitor his condition after the second assault. Instead, the court discounted her medical opinion that the assault was unconnected to his psychosis. Moreover, his argument that there was no evidence that his schizophrenia was not in remission misses the mark. The burden of proof was on him to show that he was no longer dangerous due to a mental illness. For the court to reject Dr. Pietz's opinion, the government was not required "to offer rebuttal evidence in the form of its own expert witnesses or otherwise." Id. at 70.

In addition, the panel agreed that Jackson lacked the necessary insight into his illness to connect the lessening of his symptoms to complying with his medical regimen. Although Jackson's mother stated that she would oversee his treatment at home, there is no assurance in the record that he would continue to take his medication once released. Section 4243 does not require that Jackson be released simply because there are mechanisms whereby he could be closely monitored on an outpatient basis.

10

Finally, Jackson's reliance upon <u>Foucha v. Louisiana</u>, 504 U.S. ____, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992), is misplaced. In <u>Foucha</u>, the Supreme Court found unconstitutional a Louisiana statute that permitted the indefinite detention of an insanity acquittee who was no longer mentally ill, unless he could prove he was no longer dangerous. In so doing, the Court reiterated its prior holding that "'[t]he committed acquittee is entitled to release when he has recovered his sanity <u>or</u> is no longer dangerous[.]'" <u>See</u> <u>Foucha</u> at ___, 112 S.Ct. at 1784, 118 L.Ed.2d at 446 (quoting <u>Jones v. United States</u>, 463 U.S. 354, 368, 103 S.Ct. 3043, 3052, 77 L.Ed.2d 694, 708 (1983)) (emphasis added). In <u>Foucha</u>, the acquittee was not mentally ill at the time of his dangerousness assessment. <u>See</u> <u>id.</u> at ___, 112 S.Ct. at 1785, 1788-89, 118 L.Ed. 2d at 447, 452. By contrast, Jackson failed to prove that his violent tendencies were unrelated to his psychosis.

### III.  CONCLUSION

The district court did not clearly err in finding that Jackson failed to carry his burden of proof under § 4243. We, therefore, AFFIRM the judgment of the district court denying his conditional release and committing him to the custody of the Attorney General.