

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-3-2006

# USA v. Stewart

Precedential or Non-Precedential: Precedential

Docket No. 05-2732

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Stewart" (2006). *2006 Decisions.* Paper 673.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/673

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-2732

_____

UNITED STATES OF AMERICA

v.

ANTHONY STEWART,
                              Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. Criminal No. 04-cr-772
(Honorable William H. Walls)

_____

Argued April 26, 2006
Before:  SCIRICA, *Chief Judge*,
NYGAARD, *Circuit Judge*, and YOHN[*], *District Judge*

_____

[*]Hon. William H. Yohn Jr., United States District Judge for
the Eastern District of Pennsylvania, sitting by designation.

(Filed: July 3, 2006 )

ANDREA D. BERGMAN, ESQUIRE (ARGUED)
Office of the Federal Public Defender
22 South Clinton Avenue
Station Plaza #4, 4th Floor
Trenton, New Jersey 08609
      *Counsel for Appellant*

CAROLINE A. SADLOWSKI, ESQUIRE (ARGUED)
GEORGE S. LEONE, ESQUIRE
Office of United States Attorney
970 Broad Street, Room 700
Newark, New Jersey 07102
      *Counsel for Appellee*

---

OPINION OF THE COURT

---

YOHN, *District Judge*.

In 2004, Anthony Stewart was found not guilty by reason of insanity for randomly stabbing a post-office customer in Harrison, New Jersey. At a subsequent hearing, the District Court committed Stewart to the custody of the United States Attorney General because Stewart failed to prove by clear and convincing evidence that his release into the community "would

2

not create a substantial risk of bodily injury to another person or serious damage to the property of another" under 18 U.S.C. § 4342(e). Stewart appeals, contending that the District Court erred in denying his release. For the reasons stated below, we will affirm.

## I.

Born in 1961, Stewart's adult life has been punctuated by a history of psychiatric illness and criminal behavior. Although Stewart obtained a General Education Degree after leaving high school in the eleventh grade, Stewart began to have problems with the law at the age of twenty when he was convicted in state court of possession of stolen property. The record reflects that Stewart's mental health also began to deteriorate in his twenties, resulting in several psychiatric hospitalizations for schizophrenia. These problems corresponded with a gradual escalation in Stewart's criminal behavior, from shoplifting and resisting arrest to larceny and burglary. Although Stewart received antipsychotic medication while hospitalized or incarcerated, Stewart typically did not comply with his medication regimen postrelease.

### A. The Underlying Offense & Criminal Trial

On April 29, 1999, Stewart was in a Harrison, New Jersey post office when he randomly approached customer Elizabeth Higgins from behind and stabbed her in the back of the head with a Leatherman blade. Stewart then calmly turned around and walked out. Higgins suffered a 10-centimeter

3

laceration to the lower back of her head. Stewart was apprehended that same day a short distance from the post office.

Stewart was initially charged in Hudson County Superior Court and detained at various facilities for over a year. He was transferred to federal custody on June 12, 2000, and charged with knowingly committing an assault resulting in serious bodily injury within the territorial jurisdiction of the United States, in violation of 18 U.S.C. § 113(a)(6) and 2. Stewart was temporarily committed for a mental health evaluation pursuant to 18 U.S.C. § 4241(b).[1] Evaluations by mental health professionals concluded that Stewart was not competent to stand trial pursuant to 18 U.S.C. § 4241(d). As a result, Stewart was committed to the Attorney General's custody on January 17, 2001 pursuant to 18 U.S.C. § 4241(d)(1).[2]

---

[1] Under 18 U.S.C. § 4241(b), prior to a hearing to determine competency before trial, "the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court."

[2] 18 U.S.C. § 4241(d) provides that:

> If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature

4

After approximately six months of treatment at Federal Medical Center ("FMC") Devens in Massachusetts, Stewart was evaluated by Thomas Patenaude, Ph.D., a forensic psychologist at FMC Devens. In accordance with that evaluation, on September 4, 2001, Stewart was found competent to stand trial. However, Stewart was released to Passaic County Jail, where his mental state again deteriorated. In February 2002, Stewart was determined to be incompetent to stand trial and recommitted to FMC Devens.

On July 29, 2002, the Court ordered a psychiatric examination to determine whether Stewart suffered from mental illness at the time of the April 1999 offense pursuant to 18 U.S.C. § 4242.[3] Dr. Patenaude and Dr. Catherine M. Barber,

and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility . . . for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed.

[3]18 U.S.C. § 4242(a) states that if the defendant intends to rely on the defense of insanity, the court must order "a

Stewart's retained psychologist, both concluded with a reasonable degree of psychological certainty that at the time of the offense Stewart was suffering from severe mental disease and, as a result, was unable to appreciate the nature, quality, and wrongfulness of his actions. On October 24, 2004, a stipulated fact trial was conducted by the District Court and Stewart was found not guilty by reason of insanity pursuant to 18 U.S.C. § 4242(b)(3).

## B.      Risk Assessment Panel Report

The Court subsequently ordered a psychiatric evaluation of Stewart by a panel of medical personnel at FMC Devens, pursuant to 18 U.S.C. §§ 4243(a), (b), and 4247(b).[4]  The Risk

---

psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c)."  Sections 4247(b) and (c) provide the required standards for psychological examinations.  As is the case here, if an examination is conducted pursuant to § 4242, the examiner must determine "whether the person was insane at the time of the offense charged."  18 U.S.C. § 4247(c)(4)(B).

[4] 18 U.S.C. § 4243 sets out the requirements for hospitalization of a person found not guilty by reason of insanity at the time of the offense charged.  If a person is found not guilty by reason of insanity, the court must hold a hearing to determine whether the individual must be committed to a

6

Assessment Panel Report, filed on December 30, 2004, examined Stewart's psychiatric and criminal history, his treatment at FMC Devens, and his future risk of violent recidivism. According to the panel, Stewart suffers from disorganized personality paranoid schizophrenia, and can exhibit "grandiosity [and] hyper-religiosity, possibly of delusional proportions." Appellant's App. vol. II, at 27 (Risk Assessment Panel Report, Nov, 30, 2004). During one examination, for example, Stewart stated "he is 'Allah' and that he is the most gracious, most compassionate, and most worthy." *Id.* Furthermore, the panel found that if improperly medicated, Stewart's mental illness can impact and impair his judgment, as demonstrated by his past criminal history and acts of violence. For example, while at FMC Devens, Stewart assaulted a Correctional Officer and attempted to assault the Chief Psychiatrist on November 14, 2002. However, Stewart "responded well to treatment," and after an increase in his medication, the panel reported he committed no further violence. *Id.* Stewart advanced through the mental health unit system and was eventually able to live in the least restrictive setting. The panel found that in while in the highly structured prison environment, Stewart was compliant with his medication,

---

suitable facility until he is eligible for release pursuant to 18 U.S.C. § 4243(e). 18 U.S.C. § 4243(a). Prior to the hearing, the court must order a psychiatric or psychological examination of the defendant. 18 U.S.C. § 4243(b).

attended all of his psychiatric appointments, and appeared "to be at his baseline." *Id.* at 29.

The panel also conducted a series of psychological evaluations to determine Stewart's risk for future violent behavior. The results indicated Stewart was at a "moderate risk for violent behavior," with a 17% chance he will engage in future acts of violence within the next seven years, and a 31% chance he will engage in future acts of violence within the next ten years. *Id.* at 30-31. According to the report, Stewart's history of violence, his serious mental illness, and his limited insight into his mental illness increased his risk for future violence, "especially if he becomes noncompliant in taking his prescribed psychotropic medication." *Id.* However, the panel concluded that if Stewart remained "properly medicated and in a structured and supervised environment, he is not a dangerous individual." *Id.* at 32-33.

## C.    The 18 U.S.C. § 4243 Hearing

On Stewart's motion, a hearing pursuant to 18 U.S.C. § 4243(c) was conducted on May 3, 2005 to determine whether he should be released from custody. In accordance with 18 U.S.C. § 4243(d), Stewart had "the burden of proving by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person or serious damage to the property of another due to a present mental

8

disease or defect."[5] If Stewart was successful, both parties agreed that Stewart's release was subject to no court-imposed conditions whatsoever, because the statute does not permit the district court to order a conditional release at a § 4243(c)

---

[5]At a § 4243(c) hearing, a person, found not guilty only by reason of insanity of an offense involving bodily injury to another person, "has the burden of proving by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person or serious damage to the property of another due to a present mental disease or defect." 28 U.S.C. § 4243(d). If the court finds such a showing has not been made, the court must commit the individual to the custody of the Attorney General for hospitalization in an appropriate federal–or, where available, state–facility until the individual's medical condition is such that his release, with or without conditions, would not create a substantial risk of bodily injury to another. 18 U.S.C. § 4243(e). The director of the facility at which the individual is hospitalized is responsible for annual reviews of the individual's need for hospitalization, and a certification from the director that release is appropriate may trigger release at any time after commitment. 18 U.S.C. § 4243(f). The court must then order the person discharged or, on motion of the government, hold a hearing and determine whether the standard for release is met. 18 U.S.C. § 4243(f). Likewise, after 180 days, counsel for the hospitalized individual may request a hearing regarding the individual's eligibility for release. 18 U.S.C. § 4247(h).

9

hearing. Under § 4243(e), which governs the disposition of a § 4243(c) hearing, a district court is only granted authority to either commit the defendant or release him unconditionally.[6]

***

[6]While § 4243(f) does authorize the district court to order a conditional release, that subsection is implicated only *after* an individual has been committed and hospitalized pursuant to § 4243(e). In *United States v. Baker*, the Fourth Circuit aptly summarized the difference between the two sections:

> Subsection (e) is not in any way an implicit grant of discretionary authority to the district court to order a conditional release even after a finding that the defendant does not pose the risk identified by the statute. Rather, the subsection directs the court to commit the insanity acquittee to the custody of the Attorney General should he fail to meet the burden required to justify release. In contrast, subsection (f), which by its terms applies only to insanity acquittees who have been hospitalized pursuant to an earlier subsection (e) hearing and finding, does explicitly provide for the third alternative to full release and continued commitment -- conditional release. The contrast between the express language of subsections (e) and (f) clearly demonstrates that Congress knew how to authorize conditional release of an insanity acquittee when it so desired. The absence of such language from subsection (e), therefore, is

10

*United States v. Baker*, 155 F.3d 392, 394-95 (4th Cir. 1998).

Stewart presented testimony from three witnesses: Dr. Dennis Becotte, Chief Forensic Psychologist at FMC Devens, Cheryl Tolentino, a clinical team leader for the Union County Integrated Case Management Services ("ICMS"),[7] and Wanda McNeil, Stewart's cousin. Becotte testified that while Stewart had improved at FMC Devens, Stewart's risk of future violent behavior was critically dependent on Stewart's medication regimen and living environment. Becotte stated that Stewart's stability had improved over the past two and a half years and that Stewart had "recently" acknowledged his mental illness and

> compelling evidence of an absence of corresponding authority. If further evidence of Congress' intent in this section were needed, it is provided by the plain text of subsection (g), which sets forth the procedures for the revocation of conditional discharges, and expressly references conditional release under subsection (f) but makes no reference at all to such a qualified release under subsection (e).

155 F.3d at 395 (citation omitted).

[7]According to Tolentino's testimony, ICMS is a referral program that assists individuals with mental illness in finding social, recreational, psychiatric, and medical services in Union County, New Jersey.

11

his need to stay on medication. Becotte also testified that Stewart's prognosis was good, his moderate risk of violent recidivism was relatively positive, and he currently did not pose a substantial risk of danger to the public. However, Becotte clearly expressed that Stewart's medication regimen was crucial to his stability. Without taking his required medication, Becotte testified that Stewart's risk of engaging in violent behavior substantially increased. Furthermore, Stewart's history of postrelease medication noncompliance indicated that Stewart needed a structured and supervised environment to give him "the best chance of success." Appellant's App. vol. II, at 76 (§ 4243(c) Hearing Tr., May 3, 2005). According to Becotte, this environment would ensure that Stewart received his medication biweekly, attended weekly meetings with mental health professionals who would monitor his illness, and participated in ongoing counseling therapy. This type of oversight was available through a community outpatient program, Becotte concluded, but not possible if Stewart was living on his own.

Because Stewart's release under § 4243(e) would be subject to no court-imposed conditions whatsoever, Stewart's attorney presented evidence that there would be "safeguards" in place to provide Stewart with a structured and supervised environment. *Id.* at 119. However, the witnesses' testimony raised doubts as to the level of structure and support these resources would truly provide. While Tolentino testified that ICMS could provide weekly mental health visits for Stewart, arrange for his biweekly medications, and would make referrals

12

to other agencies as appropriate, Tolentino agreed that ICMS is a completely voluntary program and Stewart could terminate its services at any time. In addition, Tolentino admitted that ICMS had not assessed Stewart, coordinated any plans for his release, or discussed his release with personnel at FMC Devens. Furthermore, while McNeil testified that she consented to letting Stewart live in her home, that she is comfortable with his illness, and that she would take the necessary steps to ensure Stewart received adequate care, she admitted that she worked every day from 8:30 a.m. to 5:00 p.m., during which time Stewart would be entirely unsupervised. McNeil also agreed that she must devote substantial attention to her four children, all of whom are seventeen years of age or younger. Finally, although Becotte stated that ICMS "looks like a very good service, assuming that they will do it," he admitted that he only learned about the ICMS program from reading a brochure that morning. *Id.* at 74. Neither he nor anyone on the panel ever talked with representatives at ICMS or interviewed McNeil. Although he was satisfied with Stewart's plan because it "sounds like a conditional release plan that we have engineered for many other cases that have been successful," Becotte admitted that Stewart's plan was "obviously not a typical condition of release plan which we work on and present to the court. There is going to be no oversight or supervision of Mr. Stewart if he is released into the community and our involvement with the case would be terminated." *Id.* at 80-81, 61.

13

At the conclusion of this hearing, the District Court denied Stewart's release pursuant to 18 U.S.C. § 4243(e). While observing that Stewart was doing about as well as could be expected given his mental illness, the Court found that Stewart's mental health evaluations indicated that he is still at a moderate risk for violent behavior and that this risk increases if he is not properly medicated. The Court determined that these factors, coupled with Stewart's only recent acknowledgment of his illness, posed formidable obstacles to release. Stewart's proposed "safeguards," according to the Court, did not eliminate the danger he otherwise posed. The Court noted that McNeil's testimony revealed she could not provide any daytime supervision and it was unknown what Stewart would do during those hours. Nor did the Court have any information regarding ICMS's history, its track record, or the specific programs in which Stewart would be enrolled upon his release. Rather, the Court found that Stewart would undergo a drastic change from the controlled conditions at FMC Devens to an environment with little or no supervision and, consequently, he could potentially decompensate and pose a great danger to other people and property. Without demonstrating an adequate release program, the Court found that Stewart had failed to show, by clear and convincing evidence, that his release would not create a substantial risk of bodily injury to another person or serious damage to the property of another and therefore denied his release. Stewart now appeals.

14

**II**.

As this is a case of first impression in this Circuit, we begin by determining whether we have jurisdiction to hear this appeal. *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 587 (3d Cir. 1999) ("We have an inherent obligation to ensure that we only decide those cases for which there is a proper ground for appellate jurisdiction."). Pursuant to 28 U.S.C. § 1291, we have jurisdiction over final orders of the district courts. A final order "terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined." *Dotzel v. Ashbridge*, 438 F.3d 320, 323 (3d Cir. 2006) (citing *St. Louis, Iron Mountain & S. Ry. Co. v. S. Express Co.*, 108 U.S. 24, 28-29 (1883)).

During a § 4243(c) hearing, a district court determines whether an individual, found not guilty solely by reason of insanity, has proven his release does not create a substantial risk of danger to society. Based on this fact-finding, the District Court conclusively determines an individual's present right to liberty. 18 U.S.C. § 4243(e). We join the Fifth, Eighth, and Eleventh Circuits and hold that a district court's § 4243(e) order committing an individual to the Attorney General's custody after his acquittal by reason of insanity is an appealable final order under § 1291. *United States v. Jackson*, 19 F.3d 1003, 1004 n.1 (5th Cir. 1994); *United States v. Clark*, 893 F.2d 1277, 1280 n.3 (11th Cir. 1990); *United States v. Wallace*, 845 F.2d 1471, 1472 (8th Cir. 1988); s*ee also* 15B Charles Alan Wright, Arthur B. Miller, Edward H. Cooper, *Federal Practice and Procedure* §

15

3918.7 (2d ed. 1992) ("An order committing the defendant to the custody of the Attorney General following acquittal solely by reason of insanity is an appealable final order.").[8]

We find this conclusion warranted because "most post judgment orders are final decisions within the ambit of 28 U.S.C. § 1291 as long as the district court has completely disposed of the matter." *Ohntrup v. Firearms Ctr., Inc.*, 802 F.2d 676, 678 (3d Cir. 1986) (quoting *Sportmart, Inc. v. Wolverine World Wide, Inc.*, 601 F.2d 313, 316 (7th Cir. 1979)). Here, the judgment of acquittal solely by reason of insanity has conclusively resolved the underlying criminal proceedings. *See Sattazahn v. Pennsylvania,* 537 U.S. 101, 120 (2003) (a judgment of acquittal conclusively resolves the trial proceedings and constitutes a final judgment). Furthermore, the District Court has completely disposed of the § 4243(e) commitment matter. The fact that the District Court may subsequently hold another hearing under §§ 4243(f) or 4247(h), and either discharge or continue to hospitalize the individual, does not render the initial § 4243(e) commitment order nonfinal. S*ee generally Reuters, Ltd. v. FCC*, 781 F.2d 946, 947 (D.C. Cir. 1986) (stating that "final orders are not limited to the last order issued in a proceeding," but must "impose an obligation, deny a right or fix some legal relationship") (quotation omitted).

---

[8]The Tenth Circuit has also assumed jurisdiction over such appeals without explicitly addressing the issue. *See United States v. Gilgert*, 314 F.3d 506, 508 (10th Cir. 2002).

16

Here, the outcome of these subsequent hearings is entirely independent of and apart from the § 4243(e) commitment. Rather, the commitment order -- specifically, the determination that an individual's release *at the time of the commitment hearing* poses a substantial risk of danger -- immediately affects the individual's rights and is never reevaluated. "Nothing further remains to be done in the district court and the consequences of commitment require that appeal be available." Wright et al., *supra* § 3918.7; *see generally Shoreham-Wading River Cent. Sch. Dist. v. U.S. Nuclear Regulatory Comm'n*, 931 F.2d 102, 105 (D.C. Cir. 1991) (finding an order that was immediately enforceable and affected the rights of the parties required a finding of finality, even if made in the course of continuing proceedings). Therefore, this Court has jurisdiction over this final order of commitment according to 28 U.S.C. § 1291.[9]

---

[9]Appellee argues that the commitment order is not a final order and is therefore only appealable under the collateral order doctrine. The collateral order doctrine applies to "that small class [of non-final orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546-47 (1949); *Dotzel*, 438 F.3d at 323. As we have determined that the commitment order is a final order subject to appeal, there is no

17

**III.**

We are next confronted with the appropriate standard of review to apply to the District Court's order. Both parties agree that the District Court's order of commitment is reviewed for clear error, and all the circuit courts that have considered the issue -- including the Fifth, Eighth, Tenth, and Eleventh Circuits -- have held that the clearly erroneous standard governs. *Gilgert*, 314 F.3d at 512; *United States v. Wattleton*, 296 F.3d 1184, 1201 n.34 (11th Cir. 2002); *United States v. Jackson*, 19 F.3d 1003, 1006 (5th Cir. 1994); *United States v. Steil*, 916 F.2d 485, 488 (8th Cir. 1990). Under the clearly erroneous standard, an appellate court can reverse only if, after reviewing the record, it is left "with the definite and firm conviction that a mistake has been committed." *United States v. Kikumura*, 918 F.2d 1084, 1090 (3d Cir. 1990). "If the district court's finding is 'plausible in light of the record viewed in its entirety,' we must accept it, even if the court would have evaluated the evidence differently in the first instance." *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)).

We agree with our sister circuits that a district court's commitment order under § 4243(e) is a finding of fact that can be reversed only if clearly erroneous. In the situation most apposite – determinations of a defendant's competency to stand trial – clear error is the governing standard. *United States v.*

need to determine whether the collateral order doctrine would be applicable, if it were not a final order.

18

*Jones*, 336 F.3d 245, 256 (3d Cir. 2003) (citing *United States v. Leggett*, 162 F.3d 237, 241 (3d Cir. 1998) (citation omitted)); s*ee also Maggio v. Fulford*, 462 U.S. 111, 117 (1983) (a determination of competency is a factual conclusion entitled to deference). Moreover, the principles of clear error review are in accord with the deference due to a trial judge's assessment of whether the public needs protection from the danger posed by a defendant's mental illness. "Given that 'it is impossible to predict how long it will take for any given individual to recover – or indeed whether he will ever recover,' district courts generally are accorded great latitude when determining whether a mentally ill defendant is ready to be released." *United States v. Jain*, 174 F.3d 892, 898 (7th Cir. 1999) (quoting *United States v. Jones*, 463 U.S. 354, 369 (1983)).

**IV.**

On appeal, Stewart argues that the District Court committed clear error because the evidence he presented at the hearing clearly and convincingly established that his release would not create a substantial risk of bodily injury to another person or serious damage to property. However, our review of the record in its entirety leads us to conclude that the trial judge did not commit clear error (or even error) in ruling Stewart failed to establish his entitlement to release.

Stewart argues that the expert testimony incontrovertibly supports his release. However, while the Risk Assessment Panel and Dr. Becotte opined that Stewart did not pose a substantial

19

risk of danger to society and recommended release, all the experts qualified this opinion with the caveat that Stewart needed to be released into a structured and supervised environment and remain medication compliant. But under § 4243(e), the District Court could only commit Stewart or release him unconditionally, and could not impose these conditions, or any other requirements, on his release. *Baker*, 155 F.3d at 394-95. Moreover, Stewart failed to provide clear and convincing evidence that his proposed plan would otherwise provide a structured and supervised environment and an environment that would help ensure his medication compliance. Stewart's plan provided no daytime supervision, his participation with ICMS was entirely voluntary, it involved only weekly mental health meetings, biweekly medication and referrals to other agencies, and little evidence was presented on the success rate of ICMS or its history. At the time of the hearing, ICMS had not even reviewed his history with anyone at FMC Devens or proposed a specific plan for his care.

These factors, coupled with Stewart's mental health and criminal history and the difficult nature of his transition to independent living, support the District Court's finding. Stewart has a long-standing mental health problem of fifteen years, coupled with a postrelease history of medication noncompliance and the commission of a violent crime and several property crimes. Due to episodes of decompensation, Stewart was unable to stand trial for more than three years. While Stewart had made progress at FMC Devens, evidence suggested he had only

recently recognized the seriousness of his illness and become compliant with the drug regimen. The District Court found that given these circumstances, Stewart's proposed safeguards were inadequate to ensure his medication compliance, and consequently, the safety of the public. If released under his plan, Stewart would experience a drastic transition from a highly controlled and supervised environment to almost complete independence with all its attendant uncertainty and stress, a transition that had proved problematic for him in the past. While Stewart did not need to provide a "fail-proof release plan including 24-hour supervision and a guarantee against recidivism, " Appellant Br. 31, there were just no assurances in the record that Stewart would continue to take his medication once released or that he would remain in a structured and supervised environment. We therefore find no clear error in the District Court's determination that Stewart failed to prove, by clear and convincing evidence, that his release did not pose a substantial risk of bodily injury to another person or serious damage to property.[10]

---

[10]At oral argument, Stewart's counsel stated that Stewart has recently requested a hearing before the district court for release under §§ 4243(f) and 4247(h). Unlike § 4243(e), which only grants the district court the authority to commit an individual or release him unconditionally, § 4243(f) also provides the court with the statutory authority to release an individual from his commitment with conditions. In the case of a conditional release, the court can release the defendant, "under a prescribed

21

## V.

For the reasons stated above, we will AFFIRM the District Court's Judgment and Commitment Order.

---

regime of medical, psychiatric, psychological care or treatment," can order his compliance with that regime "as an explicit condition of release," and, if he fails to comply, can revoke his release and remand him to a suitable facility. 18 U.S.C. §§ 4243(f), (g).