

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-8-2006

# USA v. Benjamin

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3917

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation
"USA v. Benjamin" (2006). *2006 Decisions*. Paper 222.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/222

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-3917

_____

UNITED STATES OF AMERICA

v.

GILBERT D. BENJAMIN,
                                    Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Crim. No. 02-cr-00168
District Judge:  The Honorable Mary Little Cooper

_____

Submitted Under Third Circuit LAR 34.1(a)
November 6, 2006

_____

Before: SCIRICA, Chief Judge, BARRY and ALDISERT, Circuit Judges

(Opinion Filed: November 8, 2006)

_____

OPINION

_____

BARRY, Circuit Judge

    Following a jury trial in the United States District Court for the District of New

Jersey, appellant Gilbert Benjamin was convicted of seventeen counts of mail fraud, in

violation of 18 U.S.C. §§ 1341 and 2; seventeen counts of computer mail fraud, in

violation of 18 U.S.C. §§ 1341 and 2; and thirty-four counts of false claims upon the United States, in violation of 18 U.S.C. §§ 287 and 2. The District Court sentenced Benjamin to 39 months of imprisonment, three years of supervised release, restitution to the Department of the Army in the amount of $383,605, and a special assessment of $6,800. On appeal, we affirmed Benjamin's conviction but remanded for resentencing in light of United States v. Booker, 543 U.S. 220 (2005). The District Court reimposed its earlier sentence.

Benjamin now appeals the method the District Court used to calculate loss, the legitimacy of an upward adjustment and an upward departure for obstruction of justice, and the reasonableness of the 39-month sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We will affirm.

**I.**

Between 1985 and 1998, Gilbert Benjamin worked as a civilian computer specialist at the United States Communications Electronics Command ("CECOM") of the Department of the Army, Fort Monmouth, New Jersey. In 1997, while still working for CECOM, Benjamin launched two side businesses.

The first, Blue Sky Enterprises, Inc., offered internet-based, interactive adult pornographic content to its subscribers. Blue Sky operated out of a warehouse at Allaire Airport, a private airport in Farmingdale, New Jersey, and was supported by a computer server linked to a high-speed data transmission line supplied by MCI, called a "T-1 line." The second side business involved reselling computer equipment at a discount. Benjamin

2

primarily sold the equipment out of his home's garage in Neptune, New Jersey, but also sold it through his wife and brother, Gary Benjamin, over the internet, and to coworkers.

In August 1998, CECOM employees discovered that Blue Sky was a pornographic web site operated by Benjamin. Benjamin had represented to CECOM that the T-1 line that linked Blue Sky to the internet supported United States military actions in Bosnia, and the government had been paying for a substantial portion of its cost.

Subsequent investigation established that the government had also paid for computer equipment, ordered by Benjamin, which had been shipped to locations in Florida and New Hampshire where the military had no presence. The computer equipment had been addressed to "Colonel Gary" and "Sergeant Dennis." Gary Benjamin owned an electronics store in Berlin, New Hampshire, where he employed a man named Dennis Therrien. Gary Benjamin also spent time in Sarasota, Florida. Gilbert Benjamin had authorized the shipments to his brother, asserting that the merchandise was necessary for official training purposes and for "Black Op," a top-secret government operation. Gary Benjamin sold the equipment at low prices and gave the profits to Gilbert Benjamin.

## II.

Benjamin disputes the District Court's calculation of the amount of loss to the government attributable to the T-1 line supporting Blue Sky. Specifically, Benjamin contends that the invoices on which the loss calculation was based covered an additional T-1 line running to Fort Monmouth, and not just the line that serviced Blue Sky.

Accordingly, Benjamin claims that his fraudulent billing caused losses totaling only a portion of the amount of the invoices.

We review the District Court's factual findings regarding the amount of loss for clear error. United States v. Brennan, 326 F.3d 176, 194 (3d Cir. 2003). Under the clearly erroneous standard, an appellate court can reverse only if, after reviewing the record, it is left "with the definite and firm conviction that a mistake has been committed." United States v. Stewart, 452 F.3d 266, 273 (3d Cir. 2006). "If the District Court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985). Benjamin's arguments fail to meet this exacting standard.

The District Court calculated the loss to the government pursuant to U.S.S.G. § 2F1.1, the Guidelines provision applicable to crimes of fraud and deceit. While loss must be established by a preponderance of the evidence, see United States v. Evans, 155 F.3d 245, 253 (3d Cir. 1998), the application notes to § 2F1.1 state that losses "need not be determined with precision." U.S.S.G. § 2F1.1 cmt. n.9 (1998). Courts may "make a reasonable estimate of the loss, given the available information." Id.

The technical nature of the invoices and the underlying wiring scheme they reflect made it difficult to differentiate the particular services for which the government paid, and thus extensive argument was heard on a motion for rehearing and new trial at the

4

conclusion of which the District Court found Benjamin responsible for the entire amount of the invoices.  As the District Court put it, "the evidence would not support any contrary conclusion concerning the amounts of money that were being billed to the government for internet service in this case."  We agree, and conclude that the District Court's determination that the invoices included only losses attributable to Benjamin's criminal conduct was not clearly erroneous.

## III.

Section 3C1.1 of the Guidelines provides for a two-level upward adjustment if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense."  U.S.S.G. § 3C1.1 (1998).  The commentary to § 3C1.1 explicitly includes perjury and the attempted production of falsified documents within the purview of obstruction of justice.[1]

At sentencing, the District Court found that Benjamin testified falsely at trial,

---

[1] The commentary states, in relevant part:
(4)　　The following is a non-exhaustive list of examples of the types of conduct to which this adjustment applies:
. . . .
　　(b) committing, suborning, or attempting to suborn perjury;
　　(c) producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding;
. . . .
　　(f) providing materially false information to a judge or magistrate;
. . . .
U.S.S.G. § 3C1.1 cmt. n.4.

5

warranting a two-level obstruction of justice adjustment.  The District Court also imposed

what it called a two-level upward departure based on its finding that Benjamin attempted

to offer fraudulent documents into evidence.[2]

Benjamin contends that his conduct did not rise to the level of obstruction of

justice.  We review the District Court's factual findings in relation to sentencing issues

for clear error.  United States v. Brennan, 326 F.3d 176, 200 (3d Cir. 2003).  We exercise

plenary review of its legal interpretation and application of the Guidelines.  United States

v. Coleman, 451 F.3d 154, 156 (3d Cir. 2006).

The federal statute criminalizing perjury, 18 U.S.C. § 1621, defines the behavior

that constitutes perjury for sentencing purposes.  United States v. Dunnigan, 507 U.S. 87,

94 (1993).  A witness testifying under oath or affirmation commits perjury if he or she (1)

gives false testimony (2) concerning a material matter (3) with the willful intent to

provide false testimony.  See 18 U.S.C. § 1621(1).  Perjurious statements need not cause

any additional burden upon the government.  Dunnigan, 507 U.S. at 93 (cases requiring

"some greater design to interfere with judicial proceedings . . . arose in the context of

interpreting early versions of the federal criminal contempt statute"); United States v.

_____

[2]Where a court makes an obstruction of justice finding under § 3C1.1 and the defendant has engaged in additional obstructive conduct, the court addresses the second obstruction with an upward departure.  See, e.g., United States v. Wallace, 461 F.3d 15, 37-39 (1st Cir. 2006); United States v. Furkin, 119 F.3d 1276, 1283-84 (7th Cir. 1997); United States v. Ismoila, 100 F.3d 380, 397-98 (5th Cir. 1996).  While the District Court purported to give an upward departure for the second obstruction, it also gave a downward departure for extraordinary non-military, civic and community contributions, with the departures offsetting each other and each well-supported in the record.

<u>Fiorelli</u>, 133 F.3d 218, 223 (3d Cir. 1998) ("We decline to recognize this requirement as part of the law of our circuit.").[3]

Benjamin testified at trial that he was shocked to learn, following his arrest, that stolen computers were shipped to his brother's addresses in Florida and New Hampshire. In response, the government presented invoices signed by Benjamin directing the shipment of computers to "Colonel Gary" in Sarasota, Florida, and "Sergeant Dennis" in Berlin, New Hampshire. The government also offered ample evidence that Benjamin received checks from his brother, Gary, directly attributable to the computer shipments to New Hampshire and Florida and that Benjamin deposited them into his personal bank account.

Additionally, the government established that Benjamin sought to introduce forged documents into evidence prior to taking the stand at trial. While the District Court excluded the documents because their belated production violated the pretrial discovery order, the documents included invoices for computer equipment Benjamin had altered to give the impression he had purchased the equipment himself. Benjamin later submitted the same false documents to a probation officer. Both actions qualify as obstruction of justice and, as we observed at n.2 <u>supra</u>, the District Court correctly ordered a two-level upward departure for the additional conduct, albeit a departure offset by a two-level downward departure, with sentence imposed within the otherwise unchallenged

---

[3] Inaccurate testimony resulting from "confusion, mistake, or faulty memory," however, does not constitute perjury. <u>Dunnigan</u>, 507 U.S. at 95.

Guidelines range.

## IV.

Benjamin also contends that his criminal sentence was unreasonable under <u>United States v. Booker</u>, 543 U.S. 220 (2005). <u>Booker</u> held that the federal sentencing Guidelines are advisory, not mandatory. After <u>Booker</u>, "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." <u>Id.</u> at 264. District courts must continue to impose sentences that promote the "sentencing goals" found in 18 U.S.C. § 3553(a). <u>Id.</u> at 259-60.

We have jurisdiction under § 3742(a)(1) to review sentences for reasonableness. <u>United States v. Cooper</u>, 437 F.3d 324, 327-28 (3d Cir. 2006). <u>Cooper</u> set out the framework for an analysis of reasonableness. For a sentence to be reasonable, the record must show that the District Court gave meaningful consideration to the § 3553(a) factors and "reasonably applied them to the circumstances of the case." <u>Id.</u> at 330. A sentence within the guidelines range is less likely to be unreasonable.

Prior to imposing the original sentence, the District Court addressed at length the § 3553(a) factors, and applied them to all of the circumstances presented in Benjamin's case, ultimately imposing a sentence at the lower end of the range. On resentencing, the District Court reviewed the entire record in the case, including the lengthy transcript of the original sentencing, its rulings made on guideline-related and other sentencing-related issues, and its "meticulous" consideration of the § 3553(a) factors at the time of the original sentencing. It also considered the lengthy presentence investigation report, the

8

supplemental memoranda and factual presentations of the parties, and heard argument, at the conclusion of which it imposed the same sentence it had earlier imposed. We are satisfied that the District Court adequately considered the relevant § 3553(a) factors and reasonably applied them to the circumstances of this case.

## V.

We will affirm the judgment of sentence.

_____